UNITED STATES of America,
Plaintiff-Appellee,

v.

Glenn Edward MILLER et al.,
Defendants-Appellants.

Nos. 73–1759, 73–1864 and 73–1865.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1974.

Decided Dec. 18, 1974.

William L. Gagen, Lebanon, Ill., Michael Weininger and Elliot Samuels, Chicago, Ill., for defendants-appellants.

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before PELL, Circuit Judge, and CAMPBELL and STECKLER, District Judges*.

WILLIAM J. CAMPBELL, Senior District Judge.

Defendants Davis, Miller and Jordan were named as co-defendants in Counts I, III and V of a six count indictment charging violations of the Dyer Act and conspiracy to violate the Dyer Act. Counts I and III charged violations of 18 U.S.C. § 2312 and § 2313, respectively, alleging that defendants had transported a certain 1963 Chevrolet in interstate commerce, knowing the vehicle to have been stolen, in violation of § 2312, and alleging that defendants concealed or disposed of the same vehicle in violation of § 2313. Count V charged that defendants, in violation of 18 U.S.C. § 371, conspired to transport the vehicle in interstate commerce.

Counts II, IV and VI charged defendant Miller with similar violations of §§ 2312, 2313 and 371, respectively, the vehicle in question being identified as a Ford Pinto belonging to Thomas Locke.

Defendants were convicted after a jury trial on all six counts. Their appeals have been consolidated for the purposes of briefing, oral argument and decision. The issues raised by Defendants Miller and Davis are identical. In addition to these issues, Jordan asserts that he was denied the effective assistance of counsel because his attorney was appointed only two days prior to trial, and further that he was denied a fair trial by virtue of the district court's refusal to grant his motion for severance.

We affirm the convictions of Miller and Davis and reverse the conviction of Jordan.

The evidence showed that both vehicles were stolen and transported across state lines. Verlanda Barnes, after being granted immunity by the government, testified as a government witness. Her testimony disclosed that on January 26, 1973, she, Fronie Mae Evans and the appellants left Memphis, Tennessee in the Chevrolet referred to in Counts I, III and V, and that everyone in the car knew the vehicle had been stolen. She stated that the evening prior to their journey, the defendants had agreed to drive the Chevrolet to Illinois for the express purpose of robbing a certain bank.

Barnes, Illinois State Police Officers Schrader and Mitchell, and a tow truck operator by the name of Bielong testified regarding the events that transpired after the Chevrolet arrived in Ashley, Illinois. According to their testimony, the Chevrolet was observed by Officer Schrader as it pulled into the driveway of the Ashley Motel and became stuck in the mud. Shortly thereafter, Bielong and Officer Mitchell arrived at the scene. In the interim, Jordan left the car and walked toward the Ashley Motel.

At this point, Davis pointed a gun at Mitchell, and Miller disarmed the two policemen. Evans, Barnes and Miller then departed the area in Schrader's police car. Mitchell was placed in the trunk of the other police car, and Schrader and Bielong were ordered by Davis to drive that vehicle west on U.S. Route 460.

Barnes testified that the police car in which she, Evans and Miller were riding slid off the road and into a ditch a few miles outside of Ashley. When Thomas Locke and his wife, driving their Ford Pinto, observed the police car in the ditch, Mr. Locke stopped his car to offer assistance. Miller pointed two guns at Locke and ordered him and his wife to exit their vehicle. Barnes, Evans and Miller then drove off in the Pinto in the direction of St. Louis. According to Barnes, they eventually returned to Memphis, kept the Pinto for a few days and disposed of it after attempting to wipe off their finger prints.

The Pinto was eventually recovered by FBI agents in Memphis, as was certain

---

* Senior District Judge William J. Campbell of the Northern District of Illinois and Chief Judge William E. Steckler of the Southern District of Indiana are sitting by designation.

personal property belonging to Mrs. Locke which had been left in the Pinto at the time it was stolen by Barnes, Evans and Miller.

Officer Schrader testified that after Mitchell had been placed in the trunk of the second police vehicle, Schrader was ordered to drive west on U.S. Route 460. A few miles outside of Ashley, they came upon Schrader's police car and Mr. and Mrs. Locke, who stated that their car had been stolen at gun point. The second police vehicle was then driven for an additional one and three-fourths hours in an effort to avoid road blocks, and after a high speed chase, Davis was apprehended.

In addition to the foregoing, evidence was introduced over defendants' objection that Davis had threatened to kill Officers Schrader and Mitchell after disarming them, and that ammunition was found in Barnes' Memphis apartment after her arrest. Evidence was also introduced that a gun and ammunition were found in the stolen Chevrolet.

█ On appeal, defendants first contend that since the acts alleged in the indictment as violative of the Dyer Act were identical to those alleged in the conspiracy counts, the conspiracy counts and the substantive counts merged, and it was therefore improper to sentence defendants to consecutive terms in the penitentiary for conspiracy.

A similar contention was rejected by the Supreme Court almost thirty years ago in Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). There, faced with the question of whether the petitioners' convictions for substantive violations of the Internal Revenue Code merged with a single count in the indictment alleging conspiracy to commit the substantive offenses, the Court stated:

> "Nor can we accept the proposition that the substantive offenses were merged in the conspiracy. There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. . . . Another is where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime. . . . But those exceptions are of a limited character. The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. . . . A conviction for the conspiracy may be had though the substantive offense was completed. . .

> . . . . .

> "Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. As stated in Sneed v. United States, supra, 298 F. [911,] at page 913, 'If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.' The agreement to do an unlawful act is even then distinct from the doing of the act." (Citations and footnotes omitted) 328 U.S. 643–644, 66 S.Ct. 1182.

The exceptions noted by the *Pinkerton* Court are not applicable here. Counts V and VI alleged crimes separate and distinct from those alleged in the substantive counts. "A conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. . . . Its distinguishing element is the combination of several persons for an unlawful end. The conspiracy remains none the less a crime because by its success an additional crime

has been committed. . . . Consequently, the substantive offense is not merged in the charge of conspiracy, . . . and the parties may be punished for their agreement to commit a crime as well as for the completed crime." United States v. Bazzell, 187 F.2d 878, 884 (7th Cir. 1951).

Alternatively, the defendants contend that the conspiracy counts cannot stand, asserting that the distinguishing element—the agreement among the defendants to commit the substantive offenses—was not proven. The gist of defendants contention in this regard is that no independent evidence was offered to show the existence of an agreement to violate the Dyer Act, and that the government's evidence was limited to proof of substantive offenses alleged in the indictment.

■■■ As the defendants readily concede, the existence of an agreement among co-conspirators need not be established by direct proof thereof. The agreement may, and usually is, proven by circumstantial evidence from which the trier of fact may infer a common design to achieve an unlawful end. United States v. Tyminski, 418 F.2d 1060, 1062 (2nd Cir. 1969); United States v. Varelli, 407 F.2d 735, 741 (7th Cir. 1969). The agreement may be inferred from proof of the relationship and conduct of the parties. United States v. Bucur, 194 F.2d 297, 301 (7th Cir. 1952), as well as from the actions of the parties, even though such actions also constitute commission of the substantive offense. Viewing the evidence in the light most favorable to the appellee, we find there was sufficient evidence that defendants agreed to transport the stolen Chevrolet from Tennessee to Illinois, and that Miller agreed with Barnes and Evans to steal and transport the Pinto from Illinois to Tennessee. Barnes testified that the evening before she, Evans and the defendants left Tennessee, they planned to enter Illinois to rob a bank. She also testified that the occupants of the Chevrolet knew it to be a stolen vehicle. On the basis of Barnes' testimony, the jury could properly have inferred that the defendants agreed to travel to Illinois in a stolen vehicle for the purpose of carrying out their unlawful scheme.

Likewise, the jury could have inferred the existence of an agreement to steal the Pinto from the circumstances surrounding its acquisition and disposal by Miller, Barnes and Evans. That they knew the car was stolen is beyond dispute. That they shared a common purpose in stealing the vehicle and escaping to Tennessee is equally clear. Their effort to wipe the vehicle clean of fingerprints is also indicative of a common design to dispose of the vehicle in order to prevent its being traced to them. Accordingly, we conclude that sufficient evidence existed to warrant the jury's finding that the defendants conspired to commit the acts alleged in Counts V and VI.

We turn next to defendants' contention that the introduction of evidence of other crimes with which defendants were not charged prejudiced their rights to a fair trial. Prior to trial, defendants moved to prohibit the government from introducing evidence of other crimes. The motion was taken under advisement and, during the course of trial, was denied. Thereafter, through the testimony of Barnes and various other witnesses, evidence was admitted that (1) defendants had participated in a plot to rob an Illinois bank; (2) Bielong and Officers Schrader and Mitchell were kidnapped and their lives were threatened; (3) a gun and ammunition were found in the stolen Chevrolet; and (4) ammunition was found in the apartment occupied by Barnes and Evans after their return to Tennessee.

■■ We start with the general rule that it is improper to introduce evidence of criminal acts which are not charged in the indictment. United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969) and cases cited at 419 F.2d 1022; United States v. Reid, 410 F.2d 1223 (7th Cir. 1969). To this general rule, however, there are several exceptions, one of

which is that "evidence of other crimes may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.' United States v. Wall, 225 F.2d 905, 907 (7th Cir. 1955)." United States v. Turner, 423 F.2d 481 (7th Cir. 1970). See also, United States v. Caldarazzo, 444 F.2d 1046 (7th Cir. 1971).

■ We have already noted that proof of a conspiracy to transport the stolen Chevrolet into Illinois was supported by evidence showing the purpose of the journey from Tennessee to Illinois, i. e., to rob an Illinois bank. From this fact, for example, the jury could have inferred that defendants agreed to make the journey in a stolen vehicle to prevent their detection should the car be identified by witnesses to the planned robbery. Since this evidence aided in proving one of the elements of Count V (i. e., the existence of an agreement among the defendants to commit an unlawful act) evidence of the planned bank robbery was admissible.

■ Similarly, evidence that the police officers were disarmed by Davis and Miller, and that Miller thereafter departed in a stolen police car, formed necessary links in the chain of events explaining the circumstances which led to Miller's theft of the Pinto, and accordingly, such evidence was also properly admitted as to defendants Davis and Miller.

However, it was error to allow testimony relating to the kidnapping of Bielong and the police officers and of threats which were allegedly made upon their lives. And it was totally improper to admit evidence that a gun and ammunition were later found in the Chevrolet and that ammunition was found in Barnes' apartment.

■ The government argues that evidence relating to the gun and ammunition was probative to show that "appellants had means of carrying out the overall conspiracy". The conspiracy charged, however, was not conspiracy to commit bank robbery, but conspiracy to violate the Dyer Act. While evidence of the bank robbery plan was admissible under the exception previously discussed to show the defendants' agreement to enter Illinois in a stolen vehicle, it stretches the exception beyond permissible limits to allow additional evidence of criminal conduct, unrelated to the crimes charged in the indictment, under the guise of proving other uncharged criminal activity which itself would be inadmissible, save for the fact that it tends logically to prove an element of a crime charged in the indictment.

Evidence that the police officers and the tow truck driver were kidnapped and that Davis threatened their lives was also improperly admitted. The other defendants did not participate in this criminal conduct and Davis was charged only with Dyer Act and conspiracy violations concerning the Chevrolet, which had been stolen, transported and abandoned prior to the kidnapping and the threats.

The government argues that this evidence was admissible to prove knowledge that the car was stolen, that the evidence assisted in establishing identity, and that the kidnapping and threats were so blended with the crime charged that proof of one incidentally proves the other. United States v. Iacullo, 226 F.2d 788, 793 (7th Cir. 1955).

■ With respect to the latter contention, we fail to see how proof of a crime committed after the completion of the crime charged can be said to incidentally prove that offense, particularly when the crimes are not of such a similar nature as to give rise to the common scheme or purpose exception to the rule barring admissibility of such evidence. And, while the evidence may have had some probative value in establishing Davis' identity, we cannot perceive that its value in this regard outweighed the prejudicial nature of the evidence, particularly since it was in no way useful in establishing the identity of the other defendants who had departed the scene prior to the kidnapping.

■ Finally, such evidence would not be admissible to establish criminal intent or knowledge unless and until the defendants affirmatively contested their intent and knowledge that the Chevrolet was stolen. In the instant case, defendants did not testify or present any evidence in their behalf. Since intent is always an issue, it would emasculate the rule to hold that evidence of other crimes may always be admitted to show criminal intent. As this Court stated in United States v. Fierson, supra:

"However, to justify admission into evidence of an accused's prior criminal acts to establish willfulness and intent, it is necessary that willfulness and intent be more than merely formal issues in the sense that the defendant is entitled to an instruction thereon. See United States v. Magee, supra [261 F.2d 609]. When, as in this case, the government has ample evidence to take the case to the trier of fact for its deliberation, a plea of not guilty cannot, by itself, be construed as raising such a keen dispute on the issue of willfulness and intent so as to justify admission of this type of evidence." 419 F.2d 1020, 1023.

■ Having determined that certain of the evidence of other crimes was improperly admitted, we must consider whether under the circumstances of this particular case a new trial is warranted. In short, we must determine whether the facts of this case warrant a finding by this court that the error committed was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Ordinarily, errors of the nature discussed herein would require reversal, but in the instant case, the evidence against Miller and Davis is so overwhelming that we believe it can be said with confidence and beyond a reasonable doubt that the result would have been the same had defendants' objections to this evidence been sustained. See United States v. Greer, 467 F.2d 1064, 1073 (7th Cir. 1972).

The admissible evidence included testimony by the owner of each automobile establishing that the vehicles had been stolen prior to the time that they were alleged to have been in the possession of the defendants. The Chevrolet was stolen from Memphis, Tennessee and abandoned in Ashley, Illinois. The Pinto was stolen near Ashley and was later found in Memphis. An FBI fingerprint examiner testified that Davis' fingerprints were found on the Chevrolet. A postcard belonging to Verlanda Barnes was found in the Chevrolet. Barnes testified to the entire chain of events, identifying the defendants as occupants of the Chevrolet, identifying Davis as an occupant of the Pinto, and stating that each of the defendants knew the Chevrolet was stolen at the time it was transported from Tennessee to Illinois. Officer Schrader testified that Davis and Miller were in the Chevrolet when the car was stopped in front of the Ashley Motel, and Schrader, Officer Mitchell and Bielong each testified that Davis pointed a gun at Mitchell while Miller disarmed both officers.

Testimony also showed that Davis drove from Ashley, Illinois in a police car which was later found in a ditch outside Ashley, Illinois. Mr. and Mrs. Locke, owners of the Pinto, stated that the three occupants of the abandoned police car had ordered them from their car and had departed the area in the Pinto.

In addition, an FBI agent testified that he found personal property, identified by Mrs. Locke as belonging to her, outside the apartment occupied by Barnes and Evans in Memphis. Inside the apartment, he found an identification card and a medicine bottle, each bearing Miller's name.

No evidence was presented by any of the defendants. In view of the overwhelming evidence of guilt against Miller and Davis, we must conclude beyond a reasonable doubt that the verdicts of guilty would have been returned even if the erroneously admitted evidence of other crimes had not been introduced.

Accordingly, the convic'ions of Miller and Davis are affirmed.

In view of one of the additional contentions asserted by defendant Jordan, we do not reach the issue of whether the erroneous admission of other crimes evidence was harmless error as to him. Jordan argues that he was denied the effective assistance of counsel because his attorney was appointed only a short time prior to the beginning of trial. The record indicates that, at a pre-trial conference held on the day prior to trial, Jordan requested a continuance on the ground that his counsel had not had sufficient time to prepare for trial and had not had an opportunity to discuss the case with him in any great detail. This motion was denied, and in our view, its denial constituted reversible error.

Jordan's counsel was appointed only two days prior to trial. The record does not indicate that the delay in the appointment of Jordan's counsel was in any way attributable to the defendant or to his attorney. The evidence against Jordan involved a number of items not present in the cases against Davis and Miller, including evidence related to an allegedly false statement given by Jordan to authorities in Ashley, Illinois and the identification of Jordan by government witness Charlotte Quinzi, an employee of the Ashley Motel. In addition, Jordan was incarcerated during the period prior to trial, and was therefore unable to assist in the investigation of charges against him.

 The government suggests that Jordan's attorney knew of his upcoming appointment sometime prior to the actual date on which he was assigned to the case. From this, the government contends that Jordan was not "unavailable" simply because he was incarcerated, since his prospective attorney could have interviewed him at his place of incarceration. The government's contention in this regard is totally without merit. First of all, the record does not disclose whether or not Jordan's attorney knew of his upcoming appointment prior to the actual date thereof. Secondly, an attorney who is expecting to be appointed counsel in a particular case is simply not required to act as counsel until the date of his appointment. He should safely be able to assume that, upon being appointed, he will be given sufficient time to prepare an adequate defense for his client. Thirdly, Jordan was incarcerated in the State of Tennessee. The government would have us hold that an attorney, who has not yet been appointed counsel, should travel to another state to interview an inmate who is not yet his client. Predictably, the government offers no authority in support of this novel proposition.

In United States v. Knight, 443 F.2d 174 (1971), the Sixth Circuit held the failure to grant a continuance under circumstances similar to those before us to constitute an abuse of the district judge's discretion, stating that:

"We hold that prejudice is inherent under the facts and circumstances of the present case. The newly employed attorney for appellants, no matter how competent and experienced, could not be expected to prepare adequately during a thirty minute recess for a trial which would extend over a period of two days. While fully cognizant of the crowded condition of the dockets and the heavy workload carried by the experienced and able District Judge who tried the present case, we are compelled to the conclusion that failure to grant a continuance to allow counsel at least some time to prepare for the trial constituted an abuse of discretion". 443 F.2d 178.

 In the present case, the motion for continuance was presented one day after counsel's appointment and one day prior to trial. We fail to see how counsel could have been expected to seek discovery, prepare jury instructions, interview prospective witnesses, research law, prepare his opening statement and summation, interview his client and perform the numerous other tasks and duties necessary to insure adequate representation by counsel. As Justice Black stated in

Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940):

> "But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

 Although the granting or denial of a motion for continuance is a matter within the sound discretion of the district court, and is normally not grounds for reversal on appeal, Avery v. Alabama, *supra*, we must conclude that in the instant case the district judge, for the foregoing reasons, abused his discretion in denying the motion for a continuance. Accordingly, Jordan's conviction is reversed.[1]

Jordan also asserts that he was denied a fair trial by the refusal of the trial judge to grant his motion for a severance after the trial judge denied a defense motion to prohibit the government from introducing evidence of other crimes. Since the convictions of Davis and Miller are affirmed, Jordan presumably will be the sole defendant in any new trial which is held upon remand, and accordingly, we do not reach the issue of whether Jordan's motion for a severance should have been granted.

On the basis of the foregoing, we affirm the judgments of conviction with respect to Miller and Davis, and reverse the conviction of defendant Jordan.

Nos. 74–1864 and 74–1865, affirmed.

No. 74–1759, reversed.

---

1. Nor can we consider the error harmless. As this Court recently noted "[t]he harmless-error doctrine applies with diminished rigor when the right to counsel is at stake . .." United States v. Robinson, 502 F.2d 894 (7th Cir. 1974). See Mr. Justice Stewart's concurring opinion in Chapman v. California, 386 U.S. 18, 43, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).