**UNITED STATES of America ex rel. Countee WILLIAMS, Petitioner-Appellant,**

v.

**John J. TWOMEY, Warden, Respondent-Appellee.**

No. 74–1071.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 19, 1974.

Decided Jan. 15, 1975.

Rehearing and Rehearing En Banc Denied March 24, 1975.

Charles J. Averbook, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Chicago, Ill., Nolan Lipsky, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

This is an appeal from the District Court's denial after full hearing and findings, of release on a petition for habeas corpus attacking a sentence of imprisonment for ten to twenty years imposed by the Illinois Circuit Court for Cook County following a jury verdict finding petitioner guilty of the crime of burglary of a television set. The principal issue raised here and in the District Court is petitioner's claim that he, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, was denied the effective assistance of counsel.

In stating the facts, we are mindful of the strictness with which Rule 52 of the Federal Rules of Civil Procedure enjoins us to respect the findings of fact of the District Court unless they are clearly erroneous. Our reading of those findings reveals the following situation.

April 12, 1968, Countee Williams, petitioner, Alonzo Brock, and Juan Costillo were arrested on a charge of burglary of a television set from a furniture store. The arrests were made during the rioting and looting that followed the assassination of Dr. Martin Luther King, Jr., and in the atmosphere, noticed by the District Court, "of Mayor Daley's order regarding looters and the widespread public displeasure over the destruction following the heinous assassination of Dr. King."

The state court before which petitioner was immediately brought set bail at $5,000. Not meeting the bail, he was confined in Cook County Jail until the time of the trial.

July 24, 1968, petitioner having meanwhile been indicted for the aforesaid burglary, an arrest warrant was issued against petitioner, and his bail was temporarily increased to $10,000. Due to confusion at the Cook County Jail, the authorities did not locate him there, and his case was removed from the trial call of the Circuit Court. July 31, petitioner was arraigned, his case was assigned to Judge Wilson for trial, and the judge appointed Paul Bradley, Esq., a lawyer on the staff of the Public Defender who handled cases before Judge Wilson, to represent petitioner. On the same day, Mr. Bradley, although he had not then had an opportunity to discuss the case with petitioner, filed pretrial motions. The judge held the case on the trial call for Friday, August 2, 1968.

* Senior District Judge Charles Edward Wyzanski, Jr., of the District of Massachusetts, is sitting by designation.

On July 31 and continuing through August 1, Mr. Bradley was engaged in the trial of a murder charge against another defendant before Judge Wilson, and seemingly had no conference with petitioner or concern with his case.

August 2, 1968, Judge Wilson called petitioner's case for trial. That was 112 days from the date he was taken into custody. Illinois Rev.Stat. ch. 38, § 103–5(a), (d) requires that a person charged with an offense and held in custody must be tried within 120 days from the date he was taken into custody or he must be discharged therefrom. If a defendant requests a continuance, the 120-day period commences to run again.

When called for trial, Mr. Bradley informed the court that, having been engaged in the murder trial of another defendant before Judge Wilson, counsel had only "talked to the defendant [petitioner] for maybe ten minutes in the bullpen. And at this time I am not either ready to answer ready or to make a determination of whether there should be a continuance, I would like some time to talk to defendant." When the prosecutor stated (on what basis we are left to conjecture) that "the defendant has indicated he wishes to proceed," Mr. Bradley added, "The defendant has indicated that but, as you know, I have to make certain determinations as to whether it is in our best interests, and to advise my client." Then Judge Wilson stated, "We will pass the case." Thereupon there was a recess.

In what the District Judge found must have been the earlier ten minute conference in the bullpen, the petitioner had told Mr. Bradley "that he had been with others and had just left a tavern prior to his arrest; that he was employed at the time of his arrest; and that he had a criminal record." The District Judge also found that, it seems, at the hearing before him, the petitioner testified that "he told Bradley, [it may have been during the recess before the state trial began, but the District Judge does not clarify the point,] about four individuals in whose company he was at the time of the alleged burglary. Petitioner could not give the last names or addresses of these individuals, but testified they were from the neighborhood."

The District Judge also found that "Prior to one of the discussions between Mr. Bradley and petitioner on August 2, Mr. Bradley and [the prosecutor] Mr. Friedman discussed (1) the possibility of a guilty plea in return for recommendations on sentencing and (2) the situation with respect to the 120-day term. Mr. Friedman indicated that the state did not know if it could find its witnesses; Mr. Bradley stated that he would convey the plea-sentencing offer to his client and then went to meet with the petitioner."

"In one of the discussions on August 2, [Mr.] Bradley told petitioner he was not prepared for trial and that a continuance would be needed. Petitioner was unhappy over the prospect of a continuance and he and Bradley discussed the significance of their making a request for one." [We are not informed as to how long a continuance would have been likely.]

Following one of the discussions between petitioner and Mr. Bradley, the latter indicated that "petitioner decided to gamble on the fact that the state would not be able to present its witnesses for trial."

When the trial was reconvened, on this same August 2, Mr. Bradley did not request a continuance, and "indicated he wants to go to trial today." On inquiry from the judge, the petitioner confirmed this. If the petitioner had requested a continuance, the judge, under Illinois law, could have postponed the case for 120 days. [But there is no indication how long the delay would actually have been.]

As an ultimate finding of fact, the District Court concluded that the "petitioner made the decision to go forward with the trial on August 2. . . . When making the decision to go forward with the trial, petitioner was motivated in part by the desire not to spend additional time in Cook County jail while

awaiting trial, but the principal reason behind the choice was the possibility that the state would, on such short notice, be unable to secure sufficient witnesses to prove its case."

"Before the trial commenced on August 2, [the prosecutor] Mr. Friedman gave petitioner's attorney the names of the State's three witnesses." [We are not clear whether this finding is repugnant to the one last quoted. A possible reconciliation between the findings is that the prosecutor withheld the fact that his witnesses were available until the defendant stated his readiness for trial, and this withholding occurred because Mr. Bradley did not again ask about availability of the state's witnesses. We are not unmindful that a reason why Mr. Bradley may not have made a last-minute inquiry is that, as we have already noted, in earlier discussions on the same day, Mr. Friedman, according to an already-quoted finding of the District Court, "indicated that the state did not know if it could find its witnesses," and possibly Mr. Bradley regarded that as a continuing representation by the prosecutor which the prosecutor was under a professional duty to amend if he had become aware of a change of circumstances.]

When the case began on that Friday, August 2, Mr. Bradley indicated that he couldn't be present the next week, and that there was present in court another lawyer from the Public Defender's office, a Mr. Cohan. Apparently, Judge Wilson authorized Mr. Cohan to act as a substitute, and appointed him as assigned counsel or co-counsel for petitioner. There is no indication as to whether Judge Wilson knew anything of Mr. Cohan except that he was from the office of the Public Defender. But in his findings, the United States District Judge states that Mr. Cohan "had been engaged previously in representing defendants at preliminary hearings," but this was "Mr. Cohan's first felony trial." We are not informed as to whether before the trial began, Mr. Cohan had participated in any conference with petitioner.

We, however, have been told at our bar that during at least part of the trial proceedings on Friday, August 2, Mr. Bradley was in the state courtroom, although we do not know in what capacity.

The state offered apparently all its case in chief on Friday. The court recessed over Saturday and Sunday. We are not told what Mr. Cohan did during the weekend recess. On Monday, August 5, Mr. Cohan called as his only witness petitioner. Before the District Judge, petitioner testified, apparently accurately in the District Judge's opinion, that before taking the stand he had not been warned that if he took the stand his prior criminal record would be admissible. In any event, after petitioner did testify in the state court, the prosecutor introduced petitioner's conviction record, and also called one of the arresting officers as a rebuttal witness.

The jury having convicted petitioner, he was sentenced by the court to ten to twenty years imprisonment. Petitioner sought review in a higher state court. There his appointed counsel did not raise the issue of effective assistance of trial counsel, and the conviction was undisturbed. Petitioner then filed in the United States District Court the instant petition for habeas corpus. Alonzo Brock, apparently as petitioner's witness, testified as the District Judge found, and, it seems, at least did not disbelieve, "that he broke the furniture store window and that he committed the burglary for which petitioner was charged. He stated that not many people were on the street. At the time of petitioner's trial, Brock had been declared mentally incompetent to stand trial, but [Mr.] Bradley was not aware of this." [It does not appear when Brock regained his mental competence so that he became a useable witness.]

In support of the petition, petitioner's counsel in the District Court contended that petitioner had been denied the effective assistance of counsel. Emphasis was laid on the late appointment of trial

counsel [perhaps meaning to include as trial counsel both Mr. Bradley and Mr. Cohan], on the decision, apparently by counsel as well as by the petitioner, to go to trial on August 2, on defense counsel's failure to move for a continuance on the ground that he did not have adequate time to prepare, on the failure of defense counsel to call several witnesses (including, it seems, both the co-defendant Brock and the alibi witnesses whose last names and addresses were unknown), on his failure to interview other potential witnesses, on the last minute substitution of Mr. Cohan for Mr. Bradley as defense counsel, on defense counsel's failure to present evidence that the alleged burglary took place during rioting and looting (when, it might have been argued, confusion as to the identity of the burglar might have been likely), and on defense counsel's failure to warn petitioner that if he took the stand his prior criminal record could be introduced into evidence.

The United States District Judge regarded none of those grounds adequate to prove that petitioner was denied his constitutional right to effective assistance of counsel, and denied the petition.

The judge stated that inexperience of counsel, absent a showing of prejudice, was not a sufficient basis to enlarge petitioner, and that the "Court . . . finds that no prejudice is attributable to the alleged inexperience." The judge observed that had evidence of the looting been offered, it might have been shown, as Brock later testified, that at the time of the alleged crime not many people were on the street, and that "even if there were a factual basis for such a defense theory, such evidence [of looting] might have been highly prejudicial," so that not to have shown the looting was "a question of trial tactics, over which reasonable, experienced counsel could differ." The judge noted that petitioner did not argue before him that had he known that his criminal record might be introduced he would not have taken the stand. On what the District Judge regarded as "the crux of petition-

er's claim," the judge observed that petitioner had "decided to go forward with the trial after consulting with his attorney who advised him that more time was needed to prepare," [an observation not entirely supported by the earlier specific findings which do not recite that the advice was so categorical.] "This decision was made in the hope that the state would be unable to meet its burden of proof. . . . Under the circumstances the decision is more in the nature of a tactical choice. In this context, it is worth noting that only petitioner really knew whether the four purported alibi witnesses, whose last names and addresses he could not produce, actually existed, and if so, whether they could be located if a continuance were requested."

The District Judge also referred to some minor points, none of which he regarded as significant: that the Illinois 120-day rule, which might have resulted in 4 months more of imprisonment before trial, was not the primary reason behind petitioner's decision for an immediate trial; that defense counsel failed to call character witnesses; and that, although Brock's name appeared on the indictment as a co-defendant, the prosecution did not volunteer his address.

Finally, the District Judge ruled that petitioner's testimony at the hearing was not sufficient to establish his innocence.

The judge having denied the enlargement or liberation of petitioner [not, as the judge loosely says, having denied the writ of habeas corpus, which, of course, had been issued before the hearing occurred in the United States District Court], appeal to this court followed.

■ We regard this as a close case in the light of the rule enunciated several times in this Circuit that in order to prevail in a habeas corpus petition asserting want of effective legal assistance in a criminal case, the petitioner must prove that counsel's assistance was so limited as to make "a sham or mockery" of petitioner's trial. Sims v. Lane, 411 F.2d 661, 665 (7th Cir. 1969).

■ We wholly agree with the District Court that the mere inexperience of

trial counsel is not in itself enough to establish want of effective assistance of counsel.

■ Necessarily, every lawyer must begin his career without experience. His first case is not inevitably so ill-prepared or poorly presented as to justify a finding of his incompetence. Portia without experience was a remarkably successful representative of Antonio. In estimating counsel's performance, the issue is not how much experience he has had, but how well he acted.

■ Nor do we accept as a broad general proposition that counsel appointed on the day of trial is inevitably or even presumptively unprepared to go to trial. Much depends on the nature of the charge, of the evidence known to be available to the prosecution, of the evidence susceptible of being produced at once or later by the defense, and of the experience and capacity of defense counsel. We are familiar with the ease with which Mr. John G. Johnson of the Philadelphia bar during the early years of this century successfully represented clients who retained him at the very moment that the client's case was reached for trial. And, although few could equal Mr. Johnson, many lawyers have the facility, skill, and panache which make them ready *instanter* to champion a defendant who summons him at the twelfth hour.

Yet when an inexperienced lawyer is appointed on the day of trial to represent a defendant charged with as serious a crime as burglary, we are put on inquiry as to his effectiveness in the particular matter.

Here it is plain that neither Mr. Bradley who was first appointed nor Mr. Cohan who acted as trial counsel sought even a few days' delay so that they could investigate Alonzo Brock who was named as a co-defendant and whose address was presumably known to the prosecutor, nor to see if they could identify and locate four persons whose first names defendant said he knew and whom he believed lived in the neighborhood. Moreover, Mr. Cohan did not ad-

vise petitioner of the risk that his criminal record could be introduced against him if he took the stand, nor does it even appear that Mr. Cohan addressed his own mind to a consideration of the advantage of passing the opportunity to call petitioner as a witness rather than to expose him to a revelation of his criminal record.

It is also disturbing to see at least a suggestion in the District Court's finding that, perhaps innocently, the prosecutor on August 2 first represented that he had no witnesses available and then later on that very day produced a witness, and then the next week produced a further rebuttal witness. Without charging the prosecution with bad faith, we must wonder if competent defense counsel would not have at least asked for delay when and if he was surprised by the appearance of witnesses who a few hours before had been indicated to be unavailable.

Against the factors just recited, we must scrutinize with particular care the evidence that petitioner himself (according to the findings of the District Judge, to which we must give the weight commanded by Rule 52) decided to go to trial on August 2. There is no doubt that, responding to a direct question from the state trial judge, petitioner elected to proceed forthwith. It cannot be presumed that the petitioner was totally unsophisticated, for he had a criminal record. Yet it does appear from the record that he had only an eighth grade education. He is not shown to have been advised by counsel that if he sought postponement, it was not inevitable that the trial would be delayed for, say, another hundred days; quite possibly a request for a week's delay might have been granted, particularly if Mr. Cohan, as newly appointed counsel, had said that he had had no chance, nor, because of the murder case, had Mr. Bradley had a chance to interview the co-defendant Alonzo Brock, who, as we now know, had a story exculpating petitioner, which Brock was not loath to tell. [We are less impressed by the possible alibi testimony of the four persons whose

first names petitioner claimed to know, because, so far as we can tell, even to this date their identity has not been established.]

On the whole, we have determined that it was a mistake of law for the District Judge to have concluded that petitioner, knowing his rights and competently advised as to his situation, deliberately as a matter of trial strategy decided to seek an immediate trial, and, therefore, effectively waived his right to seek a postponement.

■ Having eliminated the factor of waiver by petitioner himself, we then are faced squarely with the issue whether it was grossly incompetent professional conduct for Messrs. Bradley and Cohan not to have sought a postponement until they or one of them could speak with co-defendant Brock and learn his story and his willingness to testify. We have concluded that absent all disinterested witnesses, and with the risk involved in calling as the sole witness for the defense the defendant himself, who was vulnerable because of his prior criminal record, the conduct of Messrs. Bradley and Cohan in not seeking a delay to investigate Brock's role was sufficiently short of the expected professional standard of competent counsel to warrant us in adjudicating that petitioner was denied that effective legal assistance which constitutes the due process of law guaranteed by the due process clause of the Fourteenth Amendment, or, as is sometimes said, the assistance of counsel clause of the Sixth Amendment.

■ We are aware that this decision goes beyond an inquiry as to whether the state court trial was a sham or a mockery. But we have not gone to the point, urged upon us, of declaring that there is at least a presumption of failure to meet the constitutional guarantee of assistance of counsel merely because defendant's attorney has been appointed on the day of trial, or is inexperienced in litigation, or makes egregious errors, tactical or strategic, in preparation, in conference, in examining witnesses, or in not investigating or calling potential witnesses. The Constitution, unlike the judicial oath, does not go so far as to promise equal justice to the poor and to the rich. Yet it does not leave the poor to a representation which is in any aspect—pretrial, investigatory, trial, or otherwise—shockingly inferior to what may be expected of the prosecution's representation. While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators. The criminal defendant, whether represented by his chosen counsel, or a public agency, or a court-appointed lawyer, has the constitutional right to an advocate whose performance meets a minimum professional standard. We, having examined each of the lapses in the instant case both individually and collectively, are convinced that this petitioner for habeas corpus did not receive services of that standard in the Illinois county court.

In reaching our conclusion, we again state that we have not modified any of the United States District Judge's findings. But we cannot refrain from expressing our doubt whether there is indeed evidence to support his finding that petitioner in stating his willingness to have an immediate trial was motivated principally by his belief that the government had no available witnesses and was not chiefly motivated by his desire to avoid what he supposed was another 120-day delay. Our reading of the record did not disclose any basis in the petitioner's express statements for such a finding. There are, on the contrary, indicia that the petitioner's counsel received from the prosecutor before the case began a list of the state's witnesses, and that there was no exploration by anyone of how the state judge would have reacted to a suggestion of a postponement of a week or two. Maybe the District Judge discerned motivation from the petitioner's appearance and attitude as a witness before the United States District Court. No doubt, Lord Justice Bowen was right that a man's state of mind is as much a fact as his digestion. There are times when the observer from facial

expressions of the witness or his demeanor in testifying may rightly infer motive or other mental state. However, a cautious judge may also recall that the first Queen Elizabeth declared that we have no window into other men's souls. Here it was dangerous to have inferred the petitioner's motive when we are not even sure from the record exactly what his state-appointed counsel told him in the brief conference which preceded petitioner's declaration in open court that he was ready for trial.

In fairness to District Judge McLaren, we feel bound to add that he applied the rule enunciated in our earlier cases that a petitioner, in order to show that his constitutional right to assistance of counsel had been denied, must prove that the trial leading to his conviction was a sham or a mockery. Johnson v. United States, 422 F.2d 555, 557 (7th Cir. 1970); United States v. Dilella, 354 F.2d 584, 587 (7th Cir. 1965). On this appeal we have broadened the rule. We now hold that the Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation.

Judgment of the District Court reversed, with direction to that Court to vacate the state court sentence and to enlarge petitioner after 120 days from the date of our judgment unless before then he is brought to trial by the Illinois state authorities.

SWYGERT, Chief Judge (concurring).

Although I concur in the result reached by the majority, I do so for different reasons. And while I agree with much of what Judge Wyzanski says generally about the effective assistance of counsel when defending one charged with a criminal offense, I do not believe it can be determined from the record in this case that Bradley and Cohan were guilty of "grossly incompetent professional conduct" in their efforts on behalf of Williams. In my view the critical problems in this case derive instead from the actions of the State of Illinois in placing defendant Williams in a position where reasoned choice as to the advisa-

bility of seeking a continuance became nearly impossible, and where his appointed counsel were forced to evaluate a very serious felony charge and recommend a critical decision regarding trial strategy without even an opportunity for a private meeting with their client. Under these circumstances I do not believe that success can be the measure of professional competence. While it is possible that Bradley and Cohan did not seek a continuance through oversight or lack of diligence, it is also possible that Williams insisted that the trial proceed based on his own hurried evaluation of the options available. The district judge found that Williams chose to go to trial "in the hope that the state would be unable to meet its burden of proof" and that this was "in the nature of a tactical choice." I would accept this finding and hold that under the circumstances of this case Williams was entitled to, but did not receive, effective assistance of counsel in making this critical decision.

As the majority points out, counsel for Mr. Williams was appointed July 31, 1968. When the appointment was made it was clear that Mr. Bradley would be unable to devote significant attention to Mr. Williams' case until the conclusion of a murder trial then in progress. Nevertheless the Williams case was placed on the trial call for August 2, 1968, a mere two days later. Judge Wilson, who appointed Bradley to be Williams' attorney and who set the case for trial on August 2, was presiding over the murder trial in which Bradley was engaged and was thus fully aware of the difficulty involved in the August 2 trial date. Judge Wilson was presumably also aware of the fact that Williams had been incarcerated for 110 days at the time of his arraignment and that the Illinois 120 day rule was therefore becoming an important consideration both for Williams and for the state. Yet he called Williams' case for trial on August 2.

The record is clear that when Williams' case was first called Bradley had been unable to consult with his client for more than 10 or 15 minutes. This does not appear to be due to any laxity on

Bradley's part since he had only concluded his murder trial on the previous day. These circumstances were communicated to Judge Wilson along with a request for additional time to talk to Williams who had already indicated his desire to go to trial. A short recess ensued, after which Judge Wilson held a conference in his chambers. During this conference it became perfectly obvious that Bradley could not have prepared for trial in the time given him and that he and Mr. Cohan were in fact unprepared. Yet Judge Wilson persisted in characterizing the situation in terms of Williams' "demand" for trial. While Bradley showed great reluctance about the situation and made several veiled attempts to secure an additional period of time in which to prepare, Judge Wilson showed no hesitancy in the matter and in fact ended the conference by directly asking Williams if he still wanted to go to trial. When Williams responded that he did, Judge Wilson concluded, "All right, go ahead. Mr. Williams is demanding trial. And we will proceed right now." [1]

1. When the case was originally called, Bradley indicated his lack of opportunity to confer with Williams and his reluctance either to go to trial or to ask a continuance:

> MR. BRADLEY: As your Honor knows, this case came to this Court Wednesday while the State's Attorney and myself and the Court were engaged in a jury and then it was set over until today. I have talked to the defendant for maybe ten minutes in the bullpen. And at this time I am not either ready to answer ready or to make a determination of whether there should be a continuance. I would like some time to talk to the defendant.
>
> THE COURT: We can't keep this in suspension all morning.
>
> Is the State answering ready?
>
> MR. FRIEDMAN: Yes, absolutely. And the defendant has indicated he wishes to proceed.
>
> MR. BRADLEY: The defendant has indicated that but, as you know, I have to make certain determinations as to whether it is in our best interests, and to advise my client.
>
> THE COURT: We will pass the case.

After a brief recess the case was again called, and at the request of Bradley a conference was held in chambers. At this time Bradley again stressed the time problems involved and reminded the court that Mr. Cohan would be trying the case:

> MR. BRADLEY: Judge, as you know, this matter came up Wednesday off arraignment. At that time I was in the middle of a murder trial and didn't make any preliminary motions. And Mr. Coyntee [sic] has indicated he wants to go to trial today. But I would ask that the State agree that we are not waiving preliminary motions by starting to pick a jury today, that they will furnish us with a list of witnesses with an indication if there are any oral statements and an indication of any physical evidence that is going to be introduced, and certainly an indication if there is any written statements. And at this time we would like to reserve our right to make motions to suppress, if any of those things should come up when the State furnishes that information.
>
> Is that agreeable, Mr. Friedman?
>
> MR. FRIEDMAN: I would think it would have been incumbent upon the defense to file any motions in the case itself when the case came off arraignment to His Honor's courtroom. It was Mr. Williams who has requested to proceed, although Mr. Bradley pointed out he is leaving on vacation. And in view of the fact that we have a new Public Defender here, Mr. Williams is the one who is requesting to proceed, answering ready, and I think he does so at his own peril.
>
> MR. BRADLEY: May I reply briefly? This man has been in custody since April 12, 1968. He was brought to this courtroom for the first time—
>
> THE COURT: He is demanding trial.
>
> MR. BRADLEY: I certainly understand that, but I think he has a right to the effective assistance of counsel. And in trying to expedite this I am sure that by some sort of agreement the State will provide the things they are required to provide before trial, with enough time to properly make motions for—
>
> THE COURT: I am not making up my mind at this time, we will cover that area when we get there.
>
> THE COURT: Have you given him a list of witnesses, or anything yet?
>
> MR. FRIEDMAN: Pardon me?
>
> THE COURT: Have you furnished him with a list of witnesses?
>
> MR. BRADLEY: Yes, Your Honor, that was furnished to the Public Defender.
>
> THE COURT: The oral statements or written statements?
>
> MR. FRIEDMAN: I will offer no oral statements of this defendant.
>
> THE COURT: There have been no written confessions?
>
> MR. FRIEDMAN: No, sir.
>
> THE COURT: I don't think we have any problem.
>
> MR. BRADLEY: As to this point—

I believe that Williams' decision to go to trial was not an informed or intelligent decision and therefore did not waive his right to effective assistance of counsel. Williams could only have enjoyed such assistance by seeking a delay sufficient for both him and his appointed attorneys to evaluate the case against him and to consider the possible witnesses to be called in his defense. His decision to go to trial was so much a product of the state's inexcusable delay in setting an arraignment and appointing

> THE COURT: The man is demanding trial today without preparation?
> MR. BRADLEY: As to this point I didn't want to waive his right to statements.
> THE COURT: You wouldn't be waiving it.
> MR. BRADLEY: I wanted this clear in the record.
> THE COURT: I am sure on any evidence they will let you examine it prior to the actual trial.
> MR. FRIEDMAN: Absolutely.
> THE COURT: Williams, you still want to go to trial today?
> THE DEFENDANT: Yes.
> THE COURT: All right, go ahead.
>   Mr. Williams is demanding trial. And we will proceed right now.

The trial followed immediately.

2. Our recent opinion in United States v. Miller, 508 F.2d 444 (7th Cir. 1974), is instructive regarding late appointment of counsel in the criminal context:

> Jordan's counsel was appointed only two days prior to trial. The record does not indicate that the delay in the appointment of Jordan's counsel was in any way attributable to the defendant or to his attorney. . . . In addition, Jordan was incarcerated during the period prior to trial, and was therefore unable to assist in the investigation of charges against him.

> .   .   .   .   .

> In United States v. Knight, 443 F.2d 174 (1971), the Sixth Circuit held the failure to grant a continuance under circumstances similar to those before us to constitute an abuse of the district judge's discretion, stating that:
> "We hold that prejudice is inherent under the facts and circumstances of the present case. The newly employed attorney for appellants, no matter how competent and experienced, could not be expected to prepare adequately during a thirty minute recess for a trial which would extend over a period of two days. While fully cognizant of the crowded condition of the dockets and the

counsel that it cannot be relied upon to validate his trial. Faced as he was with a confusing welter of information, including a suggestion that the state might not be ready, a fast explanation of the 120 day rule and the possible consequences of seeking a continuance at the end of the 120 day period, an offer of a plea bargain, and the prospect of a trial that very day, Williams' decision to forego a fully prepared defense could only have been an act of desperation.[2] By delaying both the trial and the appoint-

> heavy workload carried by the experienced and able District Judge who tried the present case, we are compelled to the conclusion that failure to grant a continuance to allow counsel at least some time to prepare for the trial constituted an abuse of discretion". 443 F.2d 178.

> In the present case, the motion for continuance was presented one day after counsel's appointment and one day prior to trial. We fail to see how counsel could have been expected to seek discovery, prepare jury instructions, interview prospective witnesses, research law, prepare his opening statement and summation, interview his client and perform the numerous other tasks and duties necessary to insure adequate representation by counsel. As Justice Black stated in Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940):
> "But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

> Although the granting or denial of a motion for continuance is a matter within the sound discretion of the district court, and is normally not grounds for reversal on appeal, Avery v. Alabama, supra, we must conclude that in the instant case the district judge, for the foregoing reasons, abused his discretion in denying the motion for a continuance. Accordingly, Jordan's conviction is reversed.

Although *Miller* involved the denial of a continuance requested by a defendant in that case, we believe the considerations which led to reversal of conviction there apply here as well. The very decision not to seek a continuance in the present case was tainted by the Government's delay in appointing counsel until the very end of the 120 day period.

ment of counsel as it did, the state denied Williams sufficient time to think about his decision and it cannot now rely on that decision to support his conviction.