**UNITED STATES of America ex rel.
Richard Allen SCHULTZ,
Petitioner,**

**v.**

**John J. TWOMEY, Respondent.**

**No. 71 C 1806.**

United States District Court,
N. D. Illinois, E. D.

April 7, 1975.

Jeffrey I. Gordon, Chicago, Ill., Mayer, Brown & Platt, Washington, D. C., for petitioner.

William J. Scott, Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

MARSHALL, District Judge.

By his *pro se* habeas corpus petition filed July 23, 1971, pursuant to 28 U.S.C. §§ 2241–43 and 2254, petitioner, Richard Allen Schultz, challenged the constitutional validity of judgments of conviction entered against him by the Criminal Court of Cook County, Illinois, on October 22, 1946, finding him guilty of assault and armed robbery and imposing two concurrent sentences of 10 to 14 years and thirteen concurrent sentences of one year to life. The petition was earlier dismissed by another judge of this court without a hearing because the court had "been furnished 'reliable and adequate written indicia' that petitioner's constitutional rights were not abridged in the state court proceedings [and the court would] presume to be correct the state court's findings that petitioner was adequately warned prior to the acceptance of his plea of guilty . . . ." Petitioner appealed *pro se.* Counsel was appointed to represent him. The Court of Appeals in an unreported order, reversed and remanded for an evidentiary hearing.

New counsel was appointed in this court. Evidence was heard. The case was fully briefed and is now ready for decision. The following constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

According to petitioner's testimony, he was arrested on August 22, 1946, in Elgin, Illinois, on two charges of larceny of an automobile. He was then 16 years old. He was incarcerated in the County Jail of Kane County, Illinois, until August 26 (which was a Thursday) when he was delivered to the authorities of Cook County, Illinois, for investigation and interrogation regarding his involvement in a series of highly publicized armed robberies and assaults which had been committed in Cook County during the summer of 1946. Commencing at midnight on August 26 through the night of Sunday, August 29, petitioner was interrogated approximately 18 hours a day by Cook County officials regarding the robberies and assaults. He was not represented by counsel, saw no one other than the officials and had no communication with anyone other than the officials. During that time he confessed to thirteen robberies and two assaults.

On Monday, August 30, 1946, he was brought before the Honorable Harold G. Ward, Chief Judge of the Criminal Court of Cook County, who ordered him remanded to the Kane County Sheriff. An attorney, John O. Wagner, evidently retained by petitioner's parents, appeared before Judge Ward and objected that he had not been permitted to see his client. No opportunity was afforded petitioner and Wagner to confer at that time.

In early September, 1946, petitioner saw Wagner in the Kane County Jail where they discussed the auto larceny charges pending against petitioner in that county. Wagner said in passing that he would try to get the Cook County

charges "dropped." Later in September petitioner again saw Wagner at his preliminary hearing on the Kane County charges at which a trial date was set. There was no meaningful conference or communication between the two of them at that time.

In late September or early October, 1946, petitioner again saw Wagner who advised him to plead guilty to the Kane County charges. Petitioner did so and received two concurrent sentences of one to twenty years in the Illinois State Penitentiary. Again, according to petitioner, no communication beyond Wagner's advice to plead guilty occurred between the two of them.

Petitioner was immediately taken to the Stateville Penitentiary at Joliet, Illionis, to begin serving the Kane County sentences. While there, he had no contact with Wagner. On October 7, 1946, he was brought to the Criminal Court of Cook County for his arraignment on thirteen indictments charging him with robbery while armed with a pistol and with plain robbery, and two indictments charging him with assault. While awaiting arraignment, he was kept in a lock-up back of the courtroom and did not see Wagner. When he was brought into the courtroom, Wagner was there. His only message to the petitioner was "We're going to plead not guilty." There was no discussion. The communication occurred as the two of them stood before the court. Pleas of not guilty were entered and the causes were set for trial on October 22, 1946.

Petitioner was returned to the penitentiary at Stateville where he remained until October 22. He neither saw nor heard from Wagner during that time. The morning of October 22, he was returned to the Criminal Court of Cook County where he was again placed in the lock-up back of Judge Ward's courtroom. About thirty minutes before petitioner was taken to the courtroom, Wagner appeared in the lock-up. They conversed for about two minutes "through the bars." Wag-

ner was emotional. In addition to petitioner, he represented others who were charged as co-defendants with petitioner in certain of the indictments. Wagner said in a loud and emotional voice, "We're going to fight every case unless they give us what we want." With that he left the lock-up.

About fifteen minutes later Wagner returned. His message and manner were different: "We're going in and plead guilty. They can't give you any more than twenty years on these charges." He instructed petitioner to "Say yes" to any question which was asked him. Wagner then left the lock-up.

About fifteen minutes later, petitioner was taken into the courtroom. Wagner announced "ready for trial." According to petitioner, the prosecutor "elected the charges." Petitioner was asked by the judge whether he wanted to plead guilty. The petitioner, pursuant to Wagner's instructions, responded "Yes."

According to petitioner's testimony (no transcript of the proceedings is available) there then ensued what petitioner has characterized as a "trial" during which various of the alleged victims of the robberies and assaults made statements to the court. It is not clear whether these statements preceded or followed petitioner's guilty pleas. There were multiple defendants in each of the indictments and each defendant pleaded separately. The proceeding lasted through the morning and into the afternoon.

Petitioner testified that Judge Ward did not admonish him of the consequences of his plea. That testimony is contradicted by the affidavits of Judge Ward and assistant state's attorney Donegan who handled the cases for the State and the State court common law record. At the conclusion of the proceeding, petitioner was sentenced to two concurrent terms of ten to fourteen years on the assault charges and thirteen concurrent terms of one year to life on the

armed robbery charges. When asked during this habeas proceeding why he did not protest the one to life sentences in light of Wagner's statement to him that the maximum he could receive on the charges was twenty years, he responded that once the judgment was entered, he was led from the courtroom.

Save for a 90-day period in 1961 during which he was paroled, violated and returned to the penitentiary, petitioner was continuously incarcerated pursuant to those sentences until early 1974 when he was again paroled. Forty-five years old today, he has spent his entire adult life in the penitentiary.

The convictions were challenged upon the ground that the guilty pleas upon which they rest were induced by the misadvice of petitioner's attorney. In addition, at the conclusion of the evidentiary hearing, counsel were requested to brief not only the question of misadvice, but also the question of the overall adequacy of Wagner's representation. The briefs which have been submitted in behalf of petitioner and the State have been well done and have focused sharply on the two issues.

■■ A state court judgment is entitled to a presumption of validity when it is attacked collaterally in a habeas proceeding. To prevail here, petitioner must prove that his guilty pleas were involuntary and hence violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States, or that the representation he received was so inadequate as to constitute a deprivation of his right to assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. Where, as here, there is a long delay between the alleged constitutional violations and the challenge, the quantum of evidence necessary for petitioner to prevail is increased. *United States ex rel. Darrah v. Brierly*, 415 F.2d 9 (3d Cir. 1969); *Pasley v. Overholser*, 108 U.S.

App.D.C. 332, 282 F.2d 494, 495 (1960). Long delay diminishes the complaining petitioner's credibility as a witness to the end that his uncontradicted testimony need not be accepted as true.

The only evidence which supports the allegation that the plea was involuntary is petitioner's testimony that he was misadvised by his attorney in respect to the maximum potential sentence, corroborated in some degree by the fact that the maximum sentence which could have been imposed had petitioner pleaded to the lesser offense of plain robbery for which he was also indicted was twenty years. According to petitioner, on the day the pleas were entered Wagner first said, "We're going to fight every case unless they give us what we want," only to return fifteen minutes later and say, "We're going in and plead guilty. They can't give you any more than twenty years on these charges."

Petitioner's testimony is not incredible to one who has practiced in the criminal courts of a major metropolitan area with their enormous case loads and pressures for dispositions imposed on judges, prosecutors and defense lawyers alike;[1] the families of those accused waiting in the corridors and courtrooms for the results; defendants awaiting arraignment or trial in bullpen lock-ups back of the courtrooms; prosecutors (and even judges) threatening more "time" if the defendant does not plead guilty and quick plea defense "specialists" promising less time if the defendant does plead guilty. That may well have been the milieu in which petitioner found himself.

But the long delay in making his complaint coupled with the fact that he did not mention Wagner's alleged misadvice in two earlier petitions for gubernatorial clemency (where surely it was relevant) cut against petitioner's testimony here. Accepting as true his testimony that he was led from the courtroom after sen-

---

1. Judge Ward's affidavit recites that during the court years 1945–1946 and 1946–1947 he alone disposed of 1310 and 1412 indictments respectively.

tence was imposed and recognizing that post conviction procedures were not in 1946 what they are today (see *Marino v. Ragen* (332 U.S. 561, 563, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (Rutledge, J., concurring), still his failure to allege in his petitions for clemency his expectation of a maximum of 20 years based on Wagner's misadvice is devastating impeachment by omission. Thus if the alleged misadvice were the only issue, petitioner's proof would fall short of the level of persuasion necessary to justify overturning these State court convictions.

This is particularly so in light of the fact that the misadvice was neutralized, if not overcome, by the admonitions given defendant by the presiding judge. Judge Ward's affidavit and that of assistant state's attorney Donegan together with the State court common law record show that petitioner was admonished by the court as to the consequences of his pleas. Furthermore, petitioner testified that an extensive hearing was held at the time the pleas were accepted.

■ While the practice in 1946 with respect to guilty pleas was not as detailed and painstaking as it is today, I cannot find that admonitions respecting the penalty consequences of the pleas were not given. Indeed, I am confident that they were.

*Tarnabine v. Warden*, 331 F.Supp. 975 (E.D.La.1971), comes close on these facts and supports granting relief. But the Seventh Circuit's decision in *United States v. Jackson*, 390 F.2d 130 (1968), is dispositive. Certainly that is true of Judge Swygert's concurring opinion in which he observed, "Whatever the defendant's attorney may have represented to the defendant . . . the defendant was put on notice immediately thereafter by the judge in the courtroom [as to the consequences of his plea]. . . . . Thus any reliance that the defendant placed on what his lawyer may have told him pertaining to promises of leniency was dispelled by the subsequent discussion in the courtroom."

But according to petitioner the alleged misadvice does not stand alone. The totality of his testimony which enjoys some corroboration,[2] shows a sixteen-year-old juvenile charged in a publicized series of robberies, interrogated over a period of seventy-two hours, indicted while in the penitentiary on other charges, arraigned on October 7 and "tried" on October 22, 1946, proceeding to disposition of the charges with counsel who afforded him no consultation and virtually no representation. The meetings in Kane County were devoted entirely to those charges (where guilty pleas were entered) and a perfunctory assurance by Wagner that he would see if the Cook County charges could be "dropped." The public encounter in the courtroom in Cook County amounted to Wagner telling petitioner to plead not guilty. The emotion charged "conference" in the courtroom lock-up in October 22, consisted of Wagner saying they would "fight" the charges followed within fifteen minutes by acquiescence and the alleged misadvice.

There was no inquiry regarding the circumstances under which the confessions were obtained. No inquiry with respect to petitioner's degree of culpability was made. Wagner represented other defendants who received sentences significantly less than petitioner's.

■■ The Sixth Amendment to the Constitution requires that, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The history of the application of this guarantee to State court proceedings by way of the Fourteenth Amendment is clear. More than perfunctory repre-

---

2. Petitioner's testimony of no meetings with Wagner other than in the courthouse lock-up and the courtroom is corroborated by the absence of any record of visits while he was in Stateville, the Cook County Jail and the Kane County Jail.

sentation is required; effective representation is the standard. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Edgerton v. State,* 315 F.2d 676 (4th Cir. 1963); *Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962), *cert. denied,* 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1962); *Jones v. Cunningham,* 297 F.2d 851 (4th Cir. 1962). "[I]f the right to counsel guaranteed by the Constitution is to [best] serve its purpose, defendants cannot be left to the mercies of incompetent counsel." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). ". . . [T]he Constitution guarantees a criminal defendant legal assistance which meets a minimum standard of professional representation." *United States ex rel. Williams v. Twomey,* 510 F.2d 634 p. 641 (7th Cir. 1975). Of course, the constitutional guarantee applies not only to representation at trial but to counsel's advice with respect to defendant's decision to plead guilty. *Williams v. Kaiser,* 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945).

 Nor does the fact that petitioner was represented by retained or private counsel undercut his right to question the adequacy of the representation he received. "The criminal defendant, whether represented by his chosen counsel, or a public agency, or a court-appointed lawyer, has the constitutional right to an advocate whose performance meets a minimum professional standard." *United States ex rel. Williams v. Twomey, supra,* 510 F.2d 634 p. 640; *Craig v. United States,* 217 F.2d 355, 359 (6th Cir. 1954).[3]

Respondent urges, however, that the facts in the case were overwhelming. There were eye witnesses; petitioner had confessed; petitioner had already pleaded guilty to larceny of an automobile in Kane County. The co-defendants also pleaded guilty. Thus the State urges, so long as Wagner's advice to plead guilty was "within the range of competence demanded of attorneys in criminal cases," relief does not lie in the federal court. *McMann v. Richardson,* 397 U.S. 759, 767–771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1971). And reliance is placed upon the court's observation in *United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970), that there are cases in which "there is not too much the best defense attorney can do."

That is the essence of this problem. What could Wagner have done? Did his "gross incompetence [blot] out the essence of a substantial defense"? *Scott v. United States,* 138 U.S.App.D.C. 339, 427 F.2d 609, 610 (D.C.Cir. 1970). No suggestion has been made that it did. Thus, while his professional performance, if as described by petitioner, fell far short of our aspirations, Wagner is not here to tell us what he did out of petitioner's presence and petitioner has not told us of any fact or contention that Wagner should have investigated, developed or exploited which he did not. Cf. *United States ex rel Williams v. Twomey, supra.*

 This is not to say that a habeas petitioner must demonstrate his innocence or possible acquittal in order to be heard to complain of inadequate counsel. It is to say, however, that he must make a showing that the complained of inadequacy resulted in some specific loss to him which, when viewed in the totality of the proceedings, cannot reasonably be attributed to counsel's tactics or strategy.

Because petitioner has failed to show how he was harmed by the representa-

---

3. The Fifth Circuit has recently concluded that before habeas relief can be granted regarding a state conviction the depth of inadequacy must be more grave—or noticeable —in cases involving counsel retained by an adult defendant than in those cases in which the state provides counsel, reasoning that the former raise questions of due process while the latter raise questions of effective assistance of counsel. *Fitzgerald v. Estelle,* 16 CrL Rep. 2321 (5th Cir. 1974). Without passing on the validity of that distinction, it could not apply here to petitioner who, at age sixteen, was provided counsel selected by another.

tion or alleged lack thereof which he received, the writ should be discharged and judgment entered in favor of respondent and against petitioner.