THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY COSEY *et al.*, Defendants-Appellants.

First District (1st Division)   No. 78-1970

Opinion filed March 31, 1980.—Rehearing denied April 28, 1980.

Sam Adam, Marvin Bloom, and Arnette R. Hubbard, all of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Timothy J. McKay, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, Larry Cosey and Ernest Van Johnson convicted of attempt murder, aggravated battery causing great bodily harm, aggravated battery with use of a deadly weapon, and armed robbery. Each defendant was sentenced to concurrent terms of imprisonment of 20 years for attempt murder, wherein the aggravated battery counts were merged, and 10 years for armed robbery.

On appeal, defendants contend that (1) they were denied their right to confront witnesses when the trial court specifically considered matters not in evidence; (2) they were denied competent and effective assistance of counsel; and (3) they were not proved guilty beyond a reasonable doubt.

We affirm.

On November 6, 1977, Michael Lightfoot was shot six times. Larry

Cosey and Ernest Van Johnson were arrested in connection with the shooting and were charged by indictment with attempt murder, aggravated battery causing great bodily harm, aggravated battery with use of a deadly weapon, and armed robbery.

At trial, the complainant Michael Lightfoot testified that in the early morning on November 6, 1977, Larry Cosey arrived at his apartment with a package of heroin. They then proceeded to Cosey's house to bag the heroin into small packages and count money. Lightfoot was carrying a .38-caliber revolver containing four bullets and $3,000 in cash.

Ernest Van Johnson was present at Cosey's house when they arrived. Cosey gave Lightfoot some money that they had received from their narcotics business. Lightfoot placed his pistol and the $3,000 he had brought with him on the table and began counting the money. Johnson approached Lightfoot from behind, picked up the pistol, and shot Lightfoot in the back of the head. A scuffle ensued in this room, the adjacent hallway, and the bathroom and Lightfoot was shot several more times.

Lightfoot crawled from the bathroom to the living room behind a bar where he found a bottle. Johnson approached Lightfoot with the gun and Lightfoot hit Johnson in the face with the bottle. He then ran toward Cosey and scratched Cosey's face before being thrown to the ground by Johnson. Johnson and Cosey began hitting Lightfoot with hammers and thereafter put Lightfoot in the trunk of a red Nova.

Lightfoot was shown four photographs. He testified that People's exhibit No. 1 depicted the living room of Cosey's home where he had counted the money. People's exhibit No. 2 depicted the hallway in which he and Johnson had scuffled. People's exhibits 3 and 4 portrayed the bathroom. Each picture was a true and accurate portrayal of the rooms that day.

On cross-examination, Lightfoot testified that when the police officers questioned him at the hospital on November 6, 1977, he did not tell them the truth regarding the events; he wanted to be left alone so that the doctors could operate. He also stated that he did not initially want to "press charges." He told Officer Sharif that he was robbed of $3,000 plus the money that he had been counting and denied having told police that he was robbed of $7,000. Lightfoot also admitted that he had "snorted" heroin periodically for the past 3 or 4 years.

Donald Fowlkes, a Chicago police investigator, testified that he spoke to Lightfoot on the morning of November 6, 1977. Lightfoot told Fowlkes that he had been robbed in the hallway of a building located at 71st and Jeffrey and had $600 taken from him. On November 14, 1977, Lightfoot told Fowlkes that Cosey and Johnson had shot and beaten him

at Cosey's house and had put him in the trunk of a car. Lightfoot also stated that he had lied earlier because he did not want to "get Cosey in trouble." Investigator Fowlkes also testified that Cosey's apartment was photographed after he was arrested. He was shown these pictures (People's exhibits Nos. 1 through 4) and stated that they truly and accurately portrayed the scene of the apartment on November 16, 1977. Each photo was also identified.

Both defendants testified on their own behalf. Larry Cosey denied shooting Lightfoot. He testified that he borrowed Lightfoot's red Nova and went to a movie. He then drove around town and returned to Lightfoot's apartment. When Cosey rang the door bell, Lightfoot came down and drove Cosey home. Lightfoot also asked Cosey to call Linda Wells, Lightfoot's girl friend, and tell her that he was going to get cocaine from a friend. Cosey also testified that he had known Lightfoot for 1½ to 2 years and that he saw Lightfoot once or twice each week.

Ernest Van Johnson also denied shooting Lightfoot. He testified that he had known Lightfoot for about 6 months and had seen him only once prior to his arrest. On November 6, 1977, he was home watching television with his girl friend. Johnson further stated that he was arrested while walking in front of his home, and denied being arrested as he got out of a red car.

The parties stipulated that if Arthur Lewis were called, he would testify that on the morning of November 6, 1977, he heard someone tapping from inside the trunk of a car and called the police, who then freed Lightfoot. The parties also stipulated that Lightfoot's medical reports indicated that he had been shot six times and had sustained bruises and lacerations to his head and skull.

First, defendants contend that they were denied their constitutional right to confrontation and cross-examination where the trial court made certain factual findings regarding the photographs. The trial court stated in its findings of fact that the pictures of the bathroom revealed what appeared to be bullet holes. Defendants allege that this finding was not supported by the evidence.

■■ Defendants rely on *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143, and the cases cited therein for the proposition that a court must base its verdict solely on the evidence adduced during the trial. In *Wallenberg*, the court stated:

> "This court has held that the deliberations of the trial judge are limited to the record made before him during the course of the trial. A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of

evidence constitutes a denial of due process of law. *People v. Thunberg*, 412 Ill. 565; *People v. Rivers*, 410 Ill. 410; *People v. Cooper*, 398 Ill. 468; *People v. McGeoghegan*, 325 Ill. 337." 24 Ill. 2d 350, 354, 181 N.E.2d 143, 145.

Although this is a correct statement of the law, defendants' reliance on these cases is misplaced since in the case at bar, the trial court's deliberations were not based on either matters within its personal knowledge or private investigations.

We find sufficient evidence in the record indicating that the holes could have been bullet punctures. The testimony at trial regarding the photographs and Lightfoot's testimony regarding the shooting which took place in the hallway and bathroom provide an evidentiary basis for the trial court's conclusion. Indeed it is a function of the trier of fact to determine inferences from testimony. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) Moreover, defendants had the opportunity to see the photographs and cross-examine the witnesses about the photographs.

Secondly, defendants argue that they received incompetent assistance of counsel. As evidence of their trial attorney's incompetence, they cite Mr. Stillo's failure to object to the testimony of Officer Fowlkes regarding the conversations he had with Lightfoot. Defendants state that this testimony was inadmissible hearsay.

■■ However, the hearsay rule is inapplicable where the same matters have been testified to by the out-of-court declarant. (*People v. Sepka* (1977), 51 Ill. App. 3d 244, 367 N.E.2d 138; *People v. Robinson* (1977), 47 Ill. App. 3d 48, 361 N.E.2d 759.) Lightfoot had previously testified about the manner in which he had been shot and beaten and the original lie he had told to police. The testimony of Officer Fowlkes presented no new evidence. Therefore Mr. Stillo's failure to object did not reflect incompetence.

Defendants also argue that they received ineffective assistance of counsel because their trial attorney failed to investigate and properly prepare their case. Their new attorney, retained after trial, presented a motion for a new trial to which were attached the affidavits of five persons who would have testified to circumstances which might have raised a question as to the innocence of the defendants. Two affiants, Cosey's stepfather and a tenant who lived in the building where the shooting took place, stated that they were home on the evening in question and heard no unusual noises. Cosey's mother and a carpenter hired by her, stated that the basement was being remodeled at the time and that they noticed no change in the condition of the premises. Johnson's girl friend stated that she spent November 5 and 6, 1977, with Johnson.

■■ In *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, the Illinois

Supreme Court enunciated the standard for evaluating the competency of retained counsel:

> "A strict test is applied in determining whether privately retained counsel is incompetent:
>
>> 'In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' *People v. Torres* (1973), 54 Ill. 2d 384, 391. See also, *e.g., People v. Redmond* (1972), 50 Ill. 2d 313, 315; *People v. Washington* (1968), 41 Ill. 2d 16, 22." (72 Ill. 2d 421, 436, 381 N.E.2d 677, 685.)

It is also necessary to establish that defendant "suffered a substantial prejudice from the manner in which his counsel conducted his defense." (*People v. Wade* (1979), 71 Ill. App. 3d 1013, 1019, 389 N.E.2d 1230, 1236, citing *People v. Witherspoon* (1973), 55 Ill. 2d 18, 21, 302 N.E.2d 3, 5), such that the outcome of the trial would probably have been different. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

We are convinced from the record before us that the defendants were adequately represented despite the absence of testimony from the five affiants. The record contains numerous objections by defense counsel and amply illustrates counsel's detailed cross-examination of the prosecution's witnesses. Counsel also conscientiously argued the discrepancies in the witnesses' testimony during both his motion for a directed verdict and his closing argument. Therefore we are unable to conclude that counsel's representation amounted to no representation at all or reduced the court proceedings to a farce.

Moreover, we do not believe that the defendants were prejudiced by the absence of the witnesses at trial since the trial court would not necessarily have rendered a different verdict. The trial court was convinced of defendants' guilt beyond a reasonable doubt and harbored no reservations regarding the reliability of Lightfoot's testimony. (Compare *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) Also, three of the affiants were biased because of their relationship to the defendants. The alleged relevance of the two affidavits stating that the condition of the premises was unchanged is to show that the photographs did not depict bullet holes in the walls. However, the trial court stated that it did not use this factor in reaching its decision; therefore, this argument is without merit.

Finally, defendants contend that they were not proved guilty beyond a reasonable doubt because the prosecution's case rested upon the uncorroborated testimony of Michael Lightfoot, an admitted narcotics

user. They also argue that the trial court based its decision on the weakness of the defense, rather than on the strength of the prosecution's case.

■ The testimony of a narcotics addict must be carefully scrutinized, but such testimony is not necessarily incredible or unbelievable. (*People v. Smith* (1979), 69 Ill. App. 3d 704, 387 N.E.2d 901.) It is the duty of the trial court which had the opportunity to observe the witness' conduct and demeanor to determine the credibility of the witness and weigh his testimony. (*People v. Collins* (1978), 63 Ill. App. 3d 843, 380 N.E.2d 858.) The testimony of one witness, if positive and credible, is sufficient to convict. *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

■ In this case, the trial court specifically considered Lightfoot's use and sale of drugs both in reaching its verdict and ruling on the motion for a new trial. Because the trial court was in a better position to judge his credibility than we, we will not substitute our judgment for that of the trial court.

■ We also find defendants' contention that the trial court convicted them on the basis of the weakness of their defense to be without merit. As finder of fact, the court could properly accept or reject the testimony presented. (*People v. Conwell* (1978), 64 Ill. App. 3d 995, 382 N.E.2d 64; *People v. Young* (1973), 11 Ill. App. 3d 609, 297 N.E.2d 298.) The trial court's statement describing the defendants' testimony as "patently incredible" was merely a comment on the evidence and was not, as defendants contend, an indication that the court based its decision on the weakness of defendants' case.

Defendants also argue that the evidence was insufficient to sustain their conviction because of the discrepancies in Lightfoot's testimony. Defendants argue that Lightfoot's testimony cannot be believed because although he knew both defendants, he initially told the police that he was robbed at 71st and Jeffrey by two unknown men; the amount stolen was set at three different amounts on three different occasions; defendants had no bruises or scratches at the time of their arrest, but would have had injuries if Lightfoot had attacked them.

Discrepancies and inconsistencies in testimony effect only the weight to be given that testimony. (*People v. Smith* (1978), 67 Ill. App. 3d 672, 385 N.E.2d 44.) As stated above, it is the duty of the trial court to evaluate and weigh testimony.

Upon reviewing the record, we do not believe that the trial court's findings were erroneous. Under the circumstances, it was not unusual that Lightfoot initially lied to the police. Lightfoot himself was a narcotics dealer. Cosey had been Lightfoot's friend, and Lightfoot testified that at first he did not want Cosey to be prosecuted. Moreover, he was suffering from six gunshot wounds and according to the testimony of Officer

Fowlkes, was under sedation and medication when first questioned by police. Lightfoot admitted that he lied to police. However, his reasons for lying were that the police were harassing him and he wanted the surgery to proceed.

Furthermore, the fact that the police found no bruises on the defendants at the time of their arrest could be well explained by the lapse of time between the assault and the time of arrest. Cosey was arrested 9 days after the incident; Johnson was arrested the day thereafter. Any bruises or scratches could have healed within that time.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.