UNITED STATES of America ex rel. Larry COSEY, Petitioner,

v.

Dennis WOLFF, Warden, and Tyrone Fahner, Attorney General of the State of Illinois, Respondents.

No. 81 C 593.

United States District Court, N. D. Illinois, E. D.

Sept. 28, 1981.
On Motion For Reconsideration Nov. 10, 1981.

Sam Adam, Chicago, Ill., for petitioner.

Office of the Illinois Attorney General, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

After his October 4, 1978 conviction of attempted murder, armed robbery and aggravated battery in the Circuit Court of Cook County, petitioner Larry Cosey ("Cosey") was sentenced to 20 years in the state penitentiary. Cosey exhausted his available state remedies and then brought this petition for a writ of habeas corpus, alleging improprieties of constitutional scope in the conduct of his state court trial and appeal. Because Cosey was denied the effective assistance of trial counsel[1] his motion for summary judgment is granted and the writ of habeas corpus is issued.

### Factual Background[2]

On the morning of November 6, 1977 Michael Lightfoot ("Lightfoot") was discovered in the trunk of an automobile by an early-morning jogger. Lightfoot had been shot six times and badly beaten as well. R. 165–68. Within hours of arriving at Billings Hospital, Lightfoot told police investigators that two assailants unknown to him were responsible for his injuries, that approximately $600 had been stolen from him during the assault and that the attack had occurred at 71st Street and Jeffrey Avenue. R. 150.

Soon thereafter Lightfoot began to tell police a different story—one that he repeated at trial, perhaps with minor variations. R. 152–53. At trial he recounted the following events:

Between 2 and 3 a. m. November 6, Larry Cosey had arrived at Lightfoot's apartment with a bag of heroin. Cosey's visit was not unexpected; Lightfoot and Cosey were partners in drug trafficking. They then proceeded to Cosey's house to divide the heroin into small packages (required for street sale) and to count money. Lightfoot was carrying a .38 revolver and about $3,000 in cash. R. 85–92.

After arriving at Cosey's basement apartment Lightfoot placed his .38 and the $3,000 next to him on a table and began to "count" money given to him by Cosey. At that point Ernest Van Johnson attacked Lightfoot with the victim's own pistol, Cosey joining in the attack. Lightfoot resisted vigorously even after six bullets had been fired into his head, neck, intestine and wrist. After hitting Lightfoot on the head with hammers, Cosey and Johnson left him in the trunk of the car in which he was discovered the following morning. R. 92–111.

Lightfoot explained the radical change from his original story as to the night's events by saying that initially he did not want to "get Cosey in trouble." R. 152. In his own testimony Cosey claimed that during Lightfoot's hospital stay he had tried to blackmail Cosey by threatening to blame Cosey for the assault unless he could obtain $20,000 and a quantity of heroin for Lightfoot. R. 200.

Cosey wholly denied Lightfoot's story, testifying that the facts were these: Early on the evening of November 5—perhaps at 5 p. m. or so—Cosey had borrowed Lightfoot's car and gone to a movie. Following the movie Cosey drove around the city to "kill time" and finally returned to Lightfoot's apartment at about 2 a. m. Lightfoot then drove Cosey home and said that he was on his way to 71st and Jeffrey to pick up some cocaine. Cosey denied that he and Lightfoot were involved in the drug trade together. R. 181–83.

[1]. Of course that right, like all other due process rights, inures to state court defendants through the Fourteenth Amendment. For convenience however this opinion will follow the common practice of referring to the "Sixth Amendment" right to counsel without repeating the more accurate reference to its incorporation by the Fourteenth.

[2]. All references are to the trial court record, cited "R.___."

### State Court Decisions

Cosey waived his right to a jury trial. After a bench trial the Circuit Court judge found Cosey guilty on all counts, relying entirely upon the credibility of the respective witnesses (R. 239):

> The Court finds the testimony of Mr. Cosey and Mr. Van Johnson patently incredible and, although there were some inconsistencies in the testimony of Michael Lightfoot concerning amounts of money and the fact that he did not reveal the names of his assailants until he was mending from his wounds and the Court has further considered the fact that Lightfoot has said he uses narcotics and deals in narcotics but the Court . . . is convinced by the evidence, beyond a reasonable doubt, of the guilt of the two defendants.

Cosey's newly-retained counsel before the Illinois Appellate Court challenged his trial counsel's effectiveness. At the heart of the claim was the argument that Stello, trial attorney for Cosey and Johnson, had failed to investigate and prepare their case adequately. In support the new counsel produced the affidavits of five potential witnesses (located by new counsel during the 32-day period between Cosey's conviction and sentencing, R. 64–70) who would have testified to facts indicating the innocence of Cosey and Johnson:

Cosey's step-father would have testified that he was on the first floor of the house on South Euclid Avenue where the assault was said by Lightfoot to have taken place, that he heard no unusual noises coming from the basement in the early morning of November 6, that he observed the basement the next morning and that its condition was as it had been the previous evening. R. 64–65. Cosey's mother would have testified similarly as to the condition of the basement shortly before and after the alleged events described so graphically by Lightfoot. Al Merrick, a contractor hired to refurbish the bathroom in the basement, stated that he had left the shower in a "state of disrepair" on the day before the alleged events took place and that it was in precisely the same state when he returned to it the day after. R. 69. All that testimony, if given, would have challenged important details of Lightfoot's testimony, as well as forcing the prosecution to explain why using the basement as a shooting gallery and putative killing ground had not produced any overt change in its condition. In addition a second-floor tenant in the building would have testified that she was at home throughout the night of November 5–6 and heard no noises from the basement, specifically gunshots. R. 70. Finally, Johnson's girlfriend would have testified that she was with him, at her house, throughout the night in question. R. 68.

Cosey's Sixth Amendment argument was rejected by the Appellate Court in *People v. Cosey*, 82 Ill.App.3d 968, 972–73, 38 Ill.Dec. 425, 403 N.E.2d 656, 660–61 (1st Dist. 1980). It measured trial counsel's competency against a standard enunciated by the Illinois Supreme Court:

> A strict test is applied in determining whether privately retained counsel is incompetent:
>
>> "In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham."

It concluded that "we are unable to conclude that counsel's representation amounted to no representation at all or reduced the court proceedings to a farce."

### Adequacy of Trial Counsel's Representation

■ In applying the "farce or sham" test the Illinois Appellate Court committed error of constitutional dimensions. That criterion was specifically rejected by our Court of Appeals in favor of a "minimum standard of professional representation" some six years ago in *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640–41 (7th Cir. 1975), *cert. denied sub nom. Sielaff v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). *Accord, United States*

*v. Starnes*, 644 F.2d 673, 681 (7th Cir. 1981); *Clay v. Director, Juvenile Division*, 631 F.2d 516, 522 (7th Cir. 1980); *Matthews v. United States*, 518 F.2d 1245, 1246 (7th Cir. 1976).[3]

■ However that constitutional error only begins rather than ends the inquiry.[4] It is necessary to examine whether Cosey was denied effective assistance under the *Williams* test and, if so, whether sufficient harm could have flowed from that denial to justify granting a habeas writ. *Cf. United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981) (requiring "demonstrable prejudice, or substantial threat thereof").

Step one of the inquiry leads to a ready answer. Cosey's trial lawyer did not produce a single witness in support of Cosey's testimony, though at least five were available.[5] Instead counsel merely cross-examined the state's witnesses as best he could, made many evidentiary objections to testimony (quite often sustained) and made a closing statement to the trial judge. True enough, in none of those activities did counsel fall below a minimum standard of professional representation. Indeed, many of his evidentiary objections indicate a trial counsel of some skill in criminal matters.

But counsel's fatal flaw was his absolute failure to present any affirmative evidence at all on behalf of his clients, evidence that clearly existed in this case. *Cf. Matthews*, 518 F.2d 1245; *United States ex rel. Cyburt v. Rowe*, 638 F.2d 1100, 1105 (7th Cir. 1981). Many cases in this Circuit and others have disallowed claims of ineffective assistance of counsel because, in essence, losing criminal defendants have merely second guessed the strategy or tactics of their defense counsel. *See, e. g., United States v. Fleming*, 594 F.2d 598, 607 (7th Cir. 1979) (Chief Judge Fairchild stating, "... we adhere to the view that tactical or strategic errors during trial do not raise a presumption of failure to meet the constitutional guarantee of adequate counsel").[6] But in this case counsel's presentation of no evidence can hardly be defended as "strategy" or a "judgment call," incorrect only in hindsight. It can scarcely have been a conscious decision made after examining both sides of a close question with the skill of the experienced practitioner.[7]

---

**3.** This year another panel of the Illinois Appellate Court has, responding to the United States Supreme Court decision in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), repudiated the "farce or sham" standard. *People v. Talley*, 97 Ill.App.3d 439, 442, 443, 52 Ill.Dec. 872, 422 N.E.2d 1084, 1087–88 (1st Dist. 1981).

**4.** Because the Appellate Court did apply the wrong federal constitutional standard, this Court is not inhibited by *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) from reexamining the Appellate Court's determination as to the adequacy of representation.

**5.** This was not a case where some investigation by counsel would have been necessary to unearth friendly witnesses, as in *Williams*, 510 F.2d at 636; all the witnesses were well known to Cosey and their whereabouts easily ascertainable. Nor was this a case where counsel failed to prepare adequately a group of friendly witnesses, as in *United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377, 380 (7th Cir. 1976) (held no ineffective assistance of counsel).

**6.** Most of this Circuit's cases in this area have dealt with such questions of trial strategy. In-

variably the courts have found no constitutional violation in such cases. *See, e. g., United States v. Trapnell*, 638 F.2d 1016, 1028 (7th Cir. 1980) (references by counsel in closing argument to his clients as "not angels" and failure to raise various objections); *United States v. Caldwell*, 625 F.2d 144, 149 (7th Cir. 1980) (failure by counsel to object to prosecution's exhibit, which was concededly improperly admitted into evidence); *United States ex rel. Robinson v. Housewright*, 525 F.2d 988, 993–94 (7th Cir. 1975) (representation by counsel of conflicting interests, where counsel had reason to believe no such conflict existed). *See also Fleming*, cited in text.

**7.** It is not wholly clear whether Cosey now claims that his trial counsel (1) was not sufficiently acquainted with the case or (2) failed to mount a defense for other reasons, though the former seems more likely. See Cosey's Response 3: "it was the utter failure to investigate *prior to trial* which, constitutes the mainspring of Petitioner's complaint." In general, the most egregious cases of ineffective assistance in this Circuit have stemmed from counsel's failure to investigate or inability to investigate his client's case before trial. *See Williams*, 510 F.2d at 636; *United States ex rel.*

Nothing can justify gross neglect of the lawyer's professional obligation to defend his client zealously. In essence, Cosey was sent to prison for 20 years after a trial in which his defense was never made. As Judge Wyzanski wrote of a similar situation in *Williams*, 510 F.2d at 640:

> The Constitution, unlike the judicial oath, does not go so far as to promise equal justice to the poor and to the rich. Yet it does not leave the poor to a representation which is in any aspect ... shockingly inferior to what may be expected of the prosecution's representation. While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.

As for step two of the necessary inquiry, it is clear enough that Cosey was prejudiced by his counsel's failure to present affirmative evidence. Lightfoot was the state's major witness. His testimony was at best somewhat inconsistent on a number of key portions of his story. Production of five witnesses on behalf of Cosey could well have affected the trier's perception of Lightfoot's credibility. It might well have altered his view of Cosey's credibility (the trial judge doubtless assumed from Cosey's lack of a case that there were no other witnesses able to corroborate his story at trial).

Indeed, testimony from the five witnesses could well, by strengthening the defense's overall case, have affected the trial judge's ultimate determination in ways difficult to predict. One example may suffice. Much of the non-proffered testimony stated that the basement's condition was the same before and after the events described by Lightfoot. That may have led the trial judge to examine more skeptically the fact that the state produced no physical evidence —bloodstains, fingerprints, or anything else—from the basement tending to corroborate Lightfoot's story that a death struggle had taken place there. Such skepticism might well have been the "reasonable doubt" mandating an acquittal for Cosey.

Speculation as to where the ultimate truth lies is not the function of this Court. Cosey is constitutionally entitled to have a trial in which his case is presented by his counsel in some minimal fashion to the trier of fact.

### Conclusion

There is no genuine issue as to any material fact before this Court, and Cosey is entitled to a judgment as a matter of law. This Court issues the writ of habeas corpus and directs respondents to discharge Cosey unless the State of Illinois gives him a new trial within a reasonable time.

## ON MOTION FOR RECONSIDERATION

After this Court issued its September 28, 1981 memorandum opinion and order (the "Opinion") granting the motion of Petitioner Larry Cosey ("Cosey") for summary judgment and for issuance of the writ of habeas corpus, respondent state officials moved for reconsideration. That motion, having been fully briefed by the parties, is denied.

At the outset the Court is constrained to comment on a distressing phenomenon that it has recently found evidenced in this and other like cases. It almost seems as though state defendants do not take the prospect of losing habeas petitions with real seriousness until that in fact occurs, only then devoting full attention to issues and arguments that should have been posed in the first instance. Whatever pragmatic justification they may perceive for that process where pro se petitions are involved (perhaps the notion of husbanding resources), it is plainly inapplicable where as here the state defendants face competent counsel. And of course it is really an imposition on the Court for counsel not to give the matter their best attention initially, forcing two opinions where only one should be required.

In any case what respondents have done here is to cloak under the caption of a motion to reconsider a material shift in the

*Spencer v. Warden, Pontiac Correc. Ctr.*, 545    F.2d 21, 23–25 (7th Cir. 1976).

position they took both in the state courts and on the initial briefing here. They now say at page 2 of their motion:

There is no evidence in the record to warrant a finding that petitioner's trial counsel received information which would have led trial counsel to reasonably conclude that further investigation was necessary.

Before the state courts their argument was a very different one (Brief 39 before the Illinois Appellate Court):

The People maintained that defense counsel's representation was adequate where his decision not to call the five named people as witnesses amounted to an exercise of trial strategy and judgment.

There was no hint there of the lack of information to Cosey's trial counsel—quite the contrary. It was on *that* presentation that the Appellate Court based its decision as to adequacy of representation, employing as it did a constitutionally flawed standard, 82 Ill.App.3d 968, 972–73, 38 Ill.Dec. 425, 403 N.E.2d 656, 660–61 (1st Dist. 1980). Before this Court respondents persisted in their position advanced before the Illinois courts, *never* arguing the position now asserted as to any evidentiary deficiency.

Cosey's counsel properly advances some of the extensive authority rejecting such efforts to relitigate issues on a basis other than that consistently maintained by the party in the prior proceedings under consideration. See *e. g., Ulster County Court v. Allen*, 442 U.S. 140, 152–54, 99 S.Ct. 2213, 2222–23, 60 L.Ed.2d 777 (1979); *Steagald v. United States*, 451 U.S. 204, 208–211, 101 S.Ct. 1642, 1645–47, 68 L.Ed.2d 38 (1981).

Under the circumstances involved here it is frankly an affront to characterize the Court as having "overlooked" the "important principle" of summary judgment law requiring the absence of disputes of material fact. Counsel cannot *now* create material issues of fact when the issue is whether Cosey was constitutionally disadvantaged by the state courts' application of an unconstitutional standard *to the facts before them as presented by respondents' counsel.*

As for respondents' attempted invocation of *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), what the court has said at Opinion 791 n.4 is dispositive. This Court did not "reject" *Sumner* but properly found it inapplicable to the determination before this Court, which is *not* a determination of fact. *Harris v. Oliver*, 645 F.2d 327, 330 n.3 (5th Cir. 1981) is directly on point; see also *Sumner* on remand, 649 F.2d 713, 716 (9th Cir. 1981).

For the foregoing reasons respondents' motion for reconsideration is denied. They are again directed to discharge Cosey unless the State of Illinois gives him a new trial within a reasonable time.