UNITED STATES of America ex rel.
Larry COSEY, Petitioner,

v.

Dennis WOLFF, et al., Respondents

No. 81 C 593.

United States District Court,
N.D. Illinois, E.D.

March 7, 1983.

Sam Adam, Chicago, Ill., for petitioner.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents.

**MEMORANDUM OPINION AND ORDER**

GETZENDANNER, District Judge:

This case comes before the court for ruling after an evidentiary hearing on petitioner Larry Cosey's petition for writ of habeas corpus. The historical facts giving rise to this hearing have been recounted in several published opinions (discussed *infra*), and will not be repeated in detail.

Petitioner was tried along with a co-defendant, Ernest Van Johnson, in the Illinois Circuit Court for attempted murder, aggravated battery, and armed robbery. The victim, Michael Lightfoot, testified that he was attacked by the defendants in the basement of petitioner's home during the early morning hours of November 6, 1977. Lightfoot's testimony constituted the crux of the prosecution.[1] The Court, hearing the case without a jury, convicted petitioner on all counts and sentenced him to 20 years imprisonment.

Petitioner's sole contention in this proceeding is that the lawyer who represented him at trial, Joseph (J.T.) Stillo, was incompetent for failing to investigate and call five witnesses who could have impeached Lightfoot's version of the facts. These witnesses would have testified as follows:

Cosey's step-father would have testified that he was on the first floor of the house on South Euclid Avenue where the assault was said by Lightfoot to have taken place, that he heard no unusual noises coming from the basement in the early morning of November 6, that he observed the basement the next morning and that its condition was as it had been the previous evening. R. 64–65. Cosey's mother would have testified similarly as to the

1. The State also called Linda Wells (Lightfoot's girlfriend) and Chicago police officer Donald Foulkes. Wells' testimony was consistent with Cosey's version of the facts. Foulkes related one of the prior inconsistent statements Lightfoot had made soon after the alleged attack. The state further produced several photographs of the basement of petitioner's home that revealed, according to the trial judge, "in the paneling what appear to be or what could be bullet punctures." (Record at 162). These pictures played no role in the trial judge's finding of guilt:

The Court actually did not use these photographs to buttress its finding in any way. The Court received the photographs in evidence because they were properly offered as portrayals of the alleged crime scene. The photographs were non-essential evidence. The essential evidence was the testimony of the victim.... The Court's finding would have been the same had there been no photographs at all.

(Transcript of Hearing on Motion for New Trial at 21–22)

condition of the basement shortly before and after the alleged events described so graphically by Lightfoot. Al Merrick, a contractor hired to refurbish the bathroom in the basement, stated that he had left the shower in a "state of disrepair" on the day before the alleged events took place and that it was in precisely the same state when he returned to it the day after. R. 69. All that testimony, if given, would have challenged important details of Lightfoot's testimony, as well as forcing the prosecution to explain why using the basement as a shooting gallery and putative killing ground had not produced any overt change in its condition. In addition, a second-floor tenant in the building would have testified that she was at home throughout the night of November 5–6 and heard no noises from the basement, specifically gunshots. R. 70. Finally, Johnson's girlfriend would have testified that she was with him, at her house, throughout the night in question. R. 68.

*United States ex rel. Cosey v. Wolff,* 526 F.Supp. 788, 790 (N.D.Ill.1981).

On direct appeal, the Illinois Appellate Court rejected Cosey's argument, reasoning that "we are unable to conclude that counsel's representation amounted to no representation at all or reduced the court proceedings to a farce." *People v. Cosey,* 82 Ill.App.3d 968, 973, 38 Ill.Dec. 425, 430, 403 N.E.2d 656, 661 (1st Dist.1980). The Illinois Supreme Court denied leave to appeal, and the United States Supreme Court refused Cosey's petition for a writ of certiorari. *Cosey v. Illinois,* 449 U.S. 1115, 101 S.Ct. 928, 66 L.Ed.2d 845 (1981).

Petitioner then instituted proceedings in this Court for a writ of habeas corpus. Judge Milton I. Shadur initially heard the case and granted Cosey's motion for summary judgment. Judge Shadur held that the Illinois Appellate Court's use of the "farce or sham" standard was "error of constitutional dimension. That criterion was specifically rejected by our Court of Appeals in favor of a 'minimum standard of professional representation' some six years

ago in *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640–41 (7th Cir. 1975), *cert. denied sub nom. Sielaff v. Williams,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975)." *United States ex rel. Cosey v. Wolff, supra,* 526 F.Supp. at 790. Judge Shadur further found that Cosey had in fact been denied representation of a minimally professional nature:

> But counsel's fatal flaw was his absolute failure to present any affirmative evidence at all on behalf of his clients, evidence that clearly existed in this case. Many cases in this Circuit and others have disallowed claims of ineffective assistance of counsel because, in essence, losing criminal defendants have merely second guessed the strategy or tactics of their defense counsel. But in this case counsel's presentation of no evidence can hardly be defended as "strategy" or a "judgment call," incorrect only in hindsight. It can scarcely have been a conscious decision made after examining both sides of a close question with the skill of the experienced practitioner.

*Id.* at 791 (citations and footnotes omitted).

The Seventh Circuit Court of Appeals, noting that "[s]tate habeas cases rarely are proper cases for summary disposition in granting the writ," reversed. *United States ex rel. Cosey v. Wolff,* 682 F.2d 691, 693 (7th Cir.1982) (per curiam). To the Court, the question of competency—"a mixed question of fact and law"—was "not so clear." *Id.*

> The district court could not say as a matter of law that the failure to call the witnesses showed incompetence. For instance, as the Illinois Appellate Court pointed out, three of the potential witnesses (Cosey's mother, his stepfather, and the co-defendant's girlfriend) were biased because of their relationship to the defendants. Also, counsel may have believed that the witnesses' testimony would be false. Other legitimate explanations for the failure to call the witnesses might have become evident at a hearing. Therefore, there is a material question of fact as to whether the failure to

call the witnesses was a matter of trial strategy, and respondents are entitled to a hearing on this issue.

*Id.* at 693–94 (citations omitted). The Court of Appeals also found that it was not clear whether Stillo was even aware of the existence of the five witnesses prior to trial. If he was not, "and if the lack of knowledge was not due to counsel's failure to adhere to the constitutional standard of competence, counsel was not constitutionally ineffective in not calling the witnesses." *Id.* at 694. Finally, the Court indicated that a hearing was necessary due to concerns of basic fairness: "The targeted counsel, if at all available, should be called and given the opportunity to meet and refute the serious charges made against him. Fairness demands both sides be heard." *Id.* at 693.

Pursuant to Circuit Rule 18, the case was reassigned to this court for purposes of conducting the evidentiary hearing on remand. In accordance with the Court of Appeals' mandate, the hearing was designed both to give Stillo an opportunity to meet the serious charges asserted against him, and to resolve the fact questions still outstanding.

Two witnesses were called, petitioner and Stillo. Petitioner testified that he and his co-defendant, Johnson, informed Stillo of the witnesses' existence soon after the lawyer was retained.

Stillo, called by respondents, did not refute this assertion. He testified instead that he could not find his file and that as a consequence he did not have his notes of his interviews with Cosey and Johnson. Stillo

further stated that he had no independent recollection of the conversations described by Cosey.[2] He did not deny, however, that he did not interview the five potential witnesses. Nor did he claim to have viewed the premises where the victim said the attack occurred.

Stillo described his defense strategy. Early in the case he formed the opinion that the State's case was weak. The prosecutors believed so, and told Stillo. Moreover, Lightfoot was a drug dealer and a drug addict, and consequently, under Illinois law, the trier of fact would view his testimony with skepticism. Lightfoot had also told prior inconsistent stories to the police and was thus subject to impeachment on this ground as well. Finally, Lightfoot visited Stillo prior to trial and offered to drop charges in exchange for money. (Stillo immediately reported this fact to the prosecutors, but made little, if any, effort to get it into the record during the criminal trial.) Stillo concluded that the State would not be able to prove a prima facie case.

At trial Stillo effectively cross-examined Lightfoot,[3] but at the close of the State's case Cosey's motion for a judgment of acquittal was denied. Faced with this unexpected development, Stillo "changed his strategy,"[4] and called the defendants to the stand. One of the five witnesses who could have challenged Lightfoot's testimony, Cosey's mother, was in the courtroom and was therefore available as a defense witness. But Stillo did not call her. Nor did he seek a short continuance so as to investigate and secure the other witnesses.

**2.** These circumstances prompted the court to ask Stillo if he had an agreement with Cosey with respect to a possible malpractice action that Cosey might bring if there was a finding of incompetence by this court. Stillo testified that he had no such understanding with Cosey.

**3.** Stillo did not, however, question Lightfoot about one particular inconsistency that arose between the latter's trial testimony and the version of the facts he had sworn out under oath in his criminal complaint. (Transcript of Hearing on Motion for New Trial at 16.)

**4.** Based on this remark and Stillo's general testimony, the court formed the distinct impression that it was not until the motion to acquit

was actually denied that Stillo first considered alternative strategies. Review of the state court transcript, however, casts some doubt on this belief. Before the State called its last witness, the prosecutor asked for a short recess to "work out some stipulations" with Stillo. (Record at 70) Very possibly, these stipulations concerned Cosey's prior criminal record, which the State later used for impeachment purposes. (Record at 145–46) This train of events suggests that Stillo had communicated an intent to place Cosey on the stand even before the motion to acquit was denied. *But see* note 11, *infra.*

On the basis of the foregoing testimony, this court finds that: (1) Stillo learned of the existence of the five exculpatory witnesses well before trial; (2) Stillo made no effort to investigate or interview these witnesses; (3) Stillo reasonably believed his clients would be acquitted at the close of the State's case; and (4) Stillo failed to explore the possible use of the suggested witnesses because of his confidence in his ability to win a motion to acquit. Stillo did not explicitly articulate the latter point, but this is the only "strategy" consistent with his testimony and with what he actually did.[5] The question to be resolved is whether, under the circumstances, it was permissible for Stillo to reject the proffered witnesses out-of-hand—without even interviewing or investigating them—on the basis of his evaluation of the State's case.

■ This issue differs from that addressed by the Seventh Circuit in reversing Judge Shadur. The Court of Appeals was concerned that Stillo had been libeled unfairly; on the assumption that Stillo had in fact learned of the witnesses prior to trial, the Court indulged the belief (for purposes of reviewing a grant of summary judgment) that Stillo had investigated the witnesses and had concluded for quite legitimate reasons not to use them. But the evidence adduced on remand makes clear that Stillo reached no such judgments. Stillo did not take even the first step of interviewing the five individuals. His complete indifference prevented him from obtaining "sufficient information, although available, on which to base an intelligent decision." *United States ex rel. Lee v. Rowe,* 446 F.Supp. 1039, 1047 (N.D.Ill.1978). Stillo's error was more fundamental and egregious than the Court of Appeals had assumed:

> Whereas a strategy chosen after full investigation is entitled to almost automatic approval by the courts, a strategy chosen after partial investigation must be scrutinized more closely in order to safeguard the rights of criminal defendants.

*Washington v. Strickland,* 693 F.2d 1243, 1255 (5th Cir.1982) (Unit B en banc); *id.* at 1283 n. 13 (Johnson, J., concurring in part and dissenting in part) ("[F]or the strategy to be reasonable, the assumptions upon which it is based cannot be formed with no investigation at all.")

Nevertheless, questions of attorney competence cannot be resolved in the abstract. "Much depends on the nature of the charge, of the evidence known to be available to the prosecution, of the evidence susceptible of being produced at once or later by the defense, and of the experience and capacity of defense counsel." *United States ex rel. Williams v. Twomey, supra,* 510 F.2d at 639. Careful consideration of these factors *reinforces* the conclusion that Stillo's conduct fell well below minimum professional standards.

■ First, petitioner was on trial for extremely serious charges. Much was at stake, and Stillo's willingness to run risks should have been at a minimum. A significant period of incarceration loomed likely if counsel's assessment of the strength of the State's case turned out to be incorrect. Contingency arrangements, if at all possible, should have been arranged.

■ Examination "of the evidence known to be available to the prosecution" buttresses this conclusion. While it is conceded that Stillo had reasonable grounds for believing the State's case would fall of its own weight, the issue was nevertheless not free from a significant amount of residual doubt. The prosecution had in its favor eyewitness testimony directly implicating Cosey. Moreover, there were at least plausible grounds upon which to justify Lightfoot's prior inconsistent claims. *See People v. Cosey, supra,* 82 Ill.App.3d at 974–75, 38 Ill.Dec. at 431, 403 N.E.2d at 662. In all but the most exceptional cases, counsel for the defense cannot predict with a great degree of confidence that a motion to acquit will

---

5. The only other possibilities are that Stillo simply forgot about the witnesses or deliberately sabotaged Cosey's defense. The court has

afforded Stillo the benefit of the doubt. *Cf.* note 2, *supra.*

be granted at the close of the State's case. Cosey's prosecution was not so exceptional as to fall outside this general rule.

■ Thus, by gearing his efforts solely towards winning a motion to acquit, Stillo subjected Cosey to a significant risk of lengthy punishment.[6] This fact, of course, is unexceptional standing alone. Some criminal defendants have cases that are so weak that a formidable line of defense cannot be devised "no matter how dazzling the defense lawyer." *Wade v. Franzen*, 678 F.2d 56, 59 (7th Cir.1982). But here, Stillo simply ignored additional "evidence susceptible of being produced at once or later by the defense" that appeared, at least on its face, to be capable of drastically improving Cosey's position. Cosey and Johnson identified early on the witnesses who could refute Lightfoot's assertions. Furthermore, there is no suggestion that these witnesses were difficult to find; three were closely tied to the defendants; a fourth had been a tenant in the building in which the assault allegedly transpired; and the fifth had a known business address. Defense lawyers are not obligated to search "for the legal equivalent of a needle in a haystack." *United States v. Decoster*, 624 F.2d 196, 211 (D.C.Cir.1976) (en banc) (opinion of Leventhal, J., joined by McGowan, Tamm, Wilkey, JJ.). But neither may they completely ignore easily obtainable information that appears to be of significant value when the risks of proceeding without such information are substantial. *Gomez v. Beto*, 462 F.2d 596 (5th Cir.1972) (per curiam). *See generally United States ex rel. Lee v. Rowe, supra*, 446 F.Supp. at 1048 (N.D.Ill.1978) ("[W]here minimal investigation into facts which were already known by defense counsel could have disclosed a viable insanity defense," defense counsel committed constitutional error by failing to investigate.). *Cf. United States v. Harris*, 558 F.2d 366, 370 (7th

Cir.1977) (claim of incompetency rejected in part because there was no "basis for defendant's assertion that trial counsel failed to even investigate the possibility of [exculpatory] witnesses.").

■ This court simply can perceive no acceptable justification for Stillo's behavior. Investigation of the five witnesses would hardly have prevented counsel from pursuing his preferred course of action:

> Implicit in the district court's acceptance of the State's unsupported and merely speculative theory of why defense counsel acted as he did in declining to subpoena or call presumably available witnesses prepared to give important exculpatory testimony is the unstated assumption that a choice was forced between using their testimony or relying on the anticipated weakness of the State's case. But of course no such either/or choice was presented.
>
> So far as the record shows, the witnesses could readily have been subpoenaed and made available for calling if the course of trial dictated that strategy, with the decision being reserved pending presentation of the State's case. Had that been done, with the decision being then made not to use these witnesses, a quite different question of deliberate, though possibly unwise, trial strategy as against *simple neglect* would have been presented to the district court.

*Sneed v. Smith*, 670 F.2d 1348, 1354 (4th Cir.1982) (per curiam) (emphasis added). The present case verges on "simple neglect." Stillo made absolutely no effort to investigate the five witnesses, though a minimally competent attorney would have perceived a need at least to investigate and assess such potentially promising evidence. There are undoubtedly cases in which a primary line of argument is so open and shut that an attorney may justifiably con-

---

**6.** The same conclusion holds even if it is assumed that Stillo had a backup plan in mind from the start, namely placing Cosey on the stand. *See* note 4, *supra*. The Seventh Circuit has previously commented on the risk a defense lawyer runs in relying heavily on the testimony of a defendant who is "vulnerable

because of his prior criminal record." *United States ex rel. Williams v. Twomey, supra*, 510 F.2d at 640. Indeed, even without this complication, swearing contests between a defendant and his accuser are nearly always unpredictable as to outcome.

clude that suggested fallback positions, even the most formidable, are unnecessary and need not be explored.[7] However, this is not such a case. Attorney Stillo's prior experience notwithstanding, petitioner was denied the assistance he was due, the assistance of a minimally competent advocate.

It must be stressed that this court is not second-guessing Stillo's decision to argue misidentification, i.e., that Cosey played no part in the assault upon Lightfoot. What this court finds inexcusable is the grossly inadequate manner in which Stillo investigated available evidence supporting the defense's theory of the case. The Fifth Circuit faced a nearly identical situation in *Gomez v. Beto, supra.* In that case, a defendant was charged with a crime occurring in Houston, but claimed he was in San Antonio on the day in question. To bolster his alibi contention, the defendant gave his attorneys the names of several individuals who could allegedly corroborate the defendant's whereabouts. However, due in part to a belief that "the state's evidence was too slight to result in a guilty verdict," *id.,* 462 F.2d at 597, the defense attorneys "made no effort to contact these witnesses despite the fact that they knew [the defendant] faced a mandatory life sentence if convicted." *Id.* The Court of Appeals wasted little time in finding counsels' performance inadequate:

> When a defense counsel fails to investigate his client's only possible defense, although requested to do so by him; and fails to subpoena witnesses in support of

the defense, it can hardly be said that the defendant has had the effective assistance of counsel.

*Id.* The same conclusion must follow here. Each of the factors already discussed—the significant risks Stillo ran by relying solely upon a motion to acquit, the probable value of the suggested witnesses, the ease with which they could have been investigated, and the congruity between such an investigation and Stillo's overall strategy—all argue for such a result.

■ Alternatively, even if Stillo's initial failure to investigate the witnesses can be excused, his behavior at trial certainly cannot. For once the motion to acquit was denied, Stillo knew his primary gambit had failed and that contingency arrangements were needed. Yet even then he did not seek a continuance to investigate the witnesses, one of whom was present in court. Stillo simply put Cosey—an individual who was "vulnerable because of his prior criminal record," *United States ex rel. Williams v. Twomey, supra,* 510 F.2d at 640—on the stand.[8] Counsel did not render constitutionally adequate services. *Id.*

■ What has been said thus far further indicates that Cosey has surmounted his "initial burden of demonstrating a likelihood that counsel's inadequacy affected the outcome of the trial." *United States v. Decoster, supra,* 624 F.2d at 208, cited with approval in *Wade v. Franzen, supra,* 678 F.2d at 59;[9] *see generally Cooper v. Fitz-*

---

7. *But see* ABA Standards for Criminal Justice, The Defense Function § 4–4.1 ("It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore *all avenues* leading to facts relevant to the merits of the case and the penalty in the event of conviction.") (emphasis added).

8. In fairness to Stillo, it must be noted that Johnson (who did not have a prior record) was also called. Cosey benefitted from his co-defendant's testimony to the extent it cast doubt on Lightfoot's veracity. Nevertheless, the assistance was minimal. On direct examination, Stillo did little more than elicit from Johnson a blanket denial that he (Johnson) had shot Lightfoot. Only on cross-examination were the details of Johnson's alibi story (he had spent the night in question with his girlfriend, Bar-

bara Pittman) described. The trial court undoubtedly discounted this story both because Stillo did not raise it and because Pittman was not called to corroborate it.

9. The Seventh Circuit's remarks in *Wade* make clear that respondents are entitled to argue that Stillo's errors, in the context of the entire trial, were harmless beyond a reasonable doubt. *See infra.* While the opinion does not also state *in haec verba* that petitioner must first make an initial showing that prejudice was "likely," the Court did cite the portion of *Decoster* (set forth in the text) explicitly adopting such a burden-shifting approach. This court will thus assume for purposes of discussion that petitioner is subject to the full requirements of *Decoster. See also United States ex rel. Cosey v. Wolff,*

*harris,* 586 F.2d 1325, 1340 (9th Cir.1978) (en banc) (Hufstedler, J., concurring and dissenting) (In holding that an attorney's performance was constitutionally deficient, courts often subsume a finding of prejudice.) To begin with, a constitutionally competent attorney would most likely have decided, following an adequate investigation, to call the suggested witnesses. What evidence there is in the record indicates that their testimony would have been extremely relevant and promising. Indeed, Stillo himself recognized (in closing argument) the importance of evidence bearing on the condition of the basement immediately after the crime allegedly took place.[10]

Furthermore, while it is true that three of these witnesses were subject to charges of bias because of their ties to the defendants, this factor did not render them useless per se. Two non-related witnesses were in any event also proposed. This court may not abandon the record (which is barren due to Stillo's failure to investigate), and hypothesize reasons why the suggested witnesses might not have been used even if Stillo had discharged his investigatory duties. *Sneed v. Smith, supra,* 670 F.2d at 1354. The indications, in the record that these witnesses would most likely have been called have not been dispelled.[11]

> supra, 526 F.Supp. at 791 ("It is necessary to examine whether Cosey was denied effective assistance under the *Williams* test and, if so, whether sufficient harm could have flowed from that denial to justify granting the writ."). *But cf. United States ex rel. Williams v. Twomey, supra* (finding constitutional error without any discussion of prejudice).
>
> The *Wade* Court also cited with approval two other en banc Circuit Court decisions. Unfortunately, neither offers guidance on the issue discussed above. *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.1980) (en banc) (discussing issue of prejudice in only cursory fashion); *Cooper v. Fitzharris,* 586 F.2d 1325, 1341 & n. 19 (9th Cir.1978) (en banc) (Hufstedler, J., concurring and dissenting) (noting that majority does "not specify who bears the burden of proving prejudice or how heavy the burden will be.").
>
> Subsequent to *Wade,* the *Decoster* standard was criticized in *Washington v. Strickland, supra,* 693 F.2d at 1261–62; *id.* at 1270–73 (Tjoflat, J., specially concurring); *id.* at 1281 (Johnson, J., concurring in part and dissenting in part). The *Washington* majority held that a petitioner must instead first "show that ineffectiveness of counsel resulted in actual and substantial disadvantage to the course of his defense." *Id.* at 1262. The difference between the *Washington* and *Decoster* standards is more formalistic than real. *Id.* at 1287 (Roney, J., dissenting) ("How can counsel's ineffectiveness ... result in actual and substantial disadvantage to the defense without some likelihood of its affecting the outcome?"); *id.* at 1289 n. 1 (Hill, J., dissenting) (same).

**10.** Stillo argued:
> We feel that's very crucial to the defense's case, that certainly, were that struggle to have taken place in the basement of that apartment there would be some evidence left. There would be blood stains, fingerprints, something that could be brought to court to corroborate the testimony of Michael Light-

> foot, but there isn't. There's absolutely nothing in evidence that corroborates that. (Record at 155–56)

**11.** To the extent Stillo is faulted solely for his decision not to investigate and call the five witnesses following the denial of the motion to acquit, there is a further complication. Prior to trial, and in response to the State's discovery request, Stillo had represented that he did not intend to call any witnesses. (Common Law Record at 38). *See* Ill.Rev.Stat., ch. 110A, § 413(d) (authorizing State discovery requests for "[t]he names and last known addresses of persons [defense counsel] intends to call as witnesses"). Since failure to list a witness may result in an order excluding the proffered testimony, Ill.Rev.Stat., ch. 110A, § 415(g)(i); *People v. Douthit,* 51 Ill.App.3d 751, 9 Ill.Dec. 439, 366 N.E.2d 950 (5th Dist.1977), it must be considered whether Stillo's options were still open once the motion to acquit was lost.

As Illinois law stood at the time of trial (October 3, 1978), it seems highly unlikely that an exclusion order would have been countenanced. To begin with, state law obligated Stillo to list only those witnesses he "intended" to call. If no such intent was formed until the motion to acquit failed, Stillo's prior response might not have been grounds for a later sanction. *People v. Rayford,* 43 Ill.App.3d 283, 287, 1 Ill.Dec. 941, 944, 356 N.E.2d 1274, 1277 (5th Dist.1976); *People v. Pozzi,* 42 Ill.App.3d 537, 541, 1 Ill.Dec. 186, 189, 356 N.E.2d 186, 189 (2d Dist.1976). In any event, even if a violation had occurred, it is extremely improbable that exclusion would have been ordered. The First District of the Illinois Appellate Court (the Court that reviewed Cosey's trial) had previously reversed an order excluding all third-party witnesses proffered by a defendant:

> The exclusion of all the defense witnesses effectively deprived defendant of an opportunity to present a defense. Such a result offends our system's fundamental tenets of due process.

It is further likely, as Judge Shadur has persuasively argued, that the introduction of this testimony would have tipped the scales in Cosey's favor:

As for step two of the necessary inquiry, it is clear enough that Cosey was prejudiced by his counsel's failure to present affirmative evidence. Lightfoot was the state's major witness. His testimony was at best somewhat inconsistent on a number of key portions of his story. Production of five witnesses on behalf of Cosey could well have affected the trier's perception of Lightfoot's credibility. It might well have altered his view of Cosey's credibility (the trial judge doubtless assumed from Cosey's lack of a case that there were no other witnesses able to corroborate his story at trial).

Indeed, testimony from the five witnesses could well, by strengthening the defense's overall case, have affected the trial judge's ultimate determination in ways difficult to predict. One example may suffice. Much of the non-proffered testimony stated that the basement's condition was the same before and after the events described by Lightfoot. That may have led the trial judge to examine more skeptically the fact that the state produced no physical evidence—bloodstains, fingerprints, or anything else—from the

basement tending to corroborate Lightfoot's story that a death struggle had taken place there. Such skepticism might well have been the "reasonable doubt" mandating an acquittal for Cosey.

*United States ex rel. Cosey v. Wolff, supra,* 526 F.Supp. at 792.[12]

■ Given the foregoing analysis, respondents can prevail only by rebutting Cosey's showing of a "likelihood" of prejudice. Respondents must prove beyond a reasonable doubt that Cosey would in fact have been convicted even if Stillo had not erred. *Wade v. Franzen, supra,* 678 F.2d at 58–59. No such showing has been made. Before this court, respondents did little more than elicit from Stillo the *weaknesses* in the State's case, so as to establish the reasonableness of counsel's assessment of the prosecution. Respondents' effort cuts both ways.

For the reasons stated, the court concludes that the petition for writ of habeas corpus is meritorious. Respondents shall discharge petitioner if retrial proceedings are not commenced within 90 days.

It is so ordered.

---

*People v. Williams,* 55 Ill.App.3d 752, 757–58, 13 Ill.Dec. 234, 238, 370 N.E.2d 1261, 1265 (1st Dist.1977); *see People v. Jackson,* 48 Ill.App.3d 769, 6 Ill.Dec. 710, 363 N.E.2d 392 (4th Dist. 1977) (reversing exclusion of 14 prisoner alibi witnesses); *People v. Rayford, supra* (reversing exclusion of expert witness whose testimony would have impeached the state's key eyewitnesses); *People v. Hahn,* 39 Ill.App.3d 969, 350 N.E.2d 839 (4th Dist.1976) (criticizing similar exclusion); *People v. Pozzi, supra* (reversing exclusion of corroborative witness). *Compare People v. Douthit, supra* (affirming exclusion order where defense counsel waited at least two days after forming intent to call witnesses before informing the court of such intent, and where the defense was nevertheless able to present one corroborative witness). In general, the courts had held that the discovery sanctions were to be used to further the pursuit of truth, not to punish. A short continuance would have served this purpose.
The trial judge was in fact more than willing to grant a continuance. After Cosey testified, the Judge asked Stillo: "It's a Quarter to Five o'clock. Do you want to continue on?" (Rec-

ord at 137) Moreover, following Johnson's brief turn on the stand, the prosecutor's request "for a continuance to bring in additional rebuttal witnesses" was instantly granted. (Record at 147) Thus, even though Stillo (unlike the attorneys in the cases cited above) was not ready to go forward instantly with his witnesses and needed time to prepare, it seems likely that the trial court would have allowed him a short but reasonable period of time to get his defense in order.

12. Moreover, the trial judge's already equivocal finding concerning the alleged "bullet holes," *see* note 1, *supra,* might very well not have been made had he heard Cosey's witnesses testify that the basement was unchanged in condition following the alleged incident. In this regard, the testimony of Mr. Merrick, the contractor refurbishing the bathroom of Cosey's basement, would have been especially important. The bulk of the "bullet holes" apparently appeared in the pictures of the bathroom. (*See* Record at 82, 126)